UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANICA ASHBOURNE,             )
             )
      Plaintiff,       )
             )
    v.           ) Civ. A. No. 17-752 (EGS)
             )
DONNA HANSBERRY, et al.,    )
             )
      Defendants.     )
_____)

## FEDERAL DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Federal Defendants[1] Defendants Dinna Hansberry, Donna Prestia, ("Federal Defendants") hereby move to dismiss this action, which largely duplicated the earlier actions from which all claims were dismissed. See November 24, 2015 Memorandum Opinion in Ashbourne v. Hansberry, Civil Action No. 12-1153 BAH (D.D.C.); March 29, 2017 Memorandum Opinion in Ashbourne v. Hansberry, Civil Action No. 16-908 CKK (D.D.C.). The individual Federal Defendants (Donna Hansberry and Thomas Collins) also seek dismissal pursuant to Fed. R. Civ. P. 12(b) (2), (4), and (5), for failure

---

[1] Undersigned counsel currently represent all individual Defendants in their official capacities as well as the U.S. Department of the Treasury and the U.S. Department of Homeland Security. The Secretary of the Treasury (Steven Munchin) and the Secretary of the Department of Homeland Security (formerly, John Kelly, but currently Acting Secretary Elaine Duke, who replaces General Kelly by operation of Fed. R. Civ. P. 25(d)) are named only in their official capacities. Complaint, ¶¶ 7-8. However, the remaining Defendants (Donna Hansberry, Donna Prestia, Thomas Collins, Thomas Harker, and James Trommatter) are sued in both their personal and official capacities. Complaint, ¶¶ 2-6. Counsel currently represent Defendant Hansberry and Defendant Collins for all purposes. The other individual defendants (Donna Prestia, Thomas Harker and James Trommatter) do not appear to have been served or to have sought legal representation in the case. For these defendants not represented in their individual capacities, the United States hereby advises that the claims against them should be dismissed for reasons also applicable to the other individual defendants and present this as a statement of interest pursuant to 28 U.S.C. § 517. These individual defendants do not hereby waive any defenses that may be available to them pursuant to Fed. R. Civ. P. 12 or otherwise, including immunity from suit.

to effect proper service of a summons and complaint, as the record does not reflect any proper

service on any of the defendants sued in their individual capacities.

The Court is respectfully referred to the accompanying memorandum.

Respectfully submitted,

CHANNING D. PHILLIPS, DC Bar #415793
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division


By:_____/s/
    W. MARK NEBEKER, DC Bar #396739
    Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANICA ASHBOURNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. A. No. 17-752 (EGS) | |
| | ) | |
| DONNA HANSBERRY, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN
<u>SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS</u>

I.  <u>INTRODUCTION</u>

Federal Defendants seek dismissal of this action.  The claims are barred by the doctrine of <u>res judiucata</u> and collateral estoppel, in that Plaintiff has previously pursued claims against many of the same individiual defendants in Civil Action No. 12-1153 (BAH) and Civil Action No. 16-908 (CKK).  In any event, the record does not establish that the individual, defendants have been properly served in the case.  Nor can Plaintiff bring an action under the Privacy Act against individual defendants.  Plaintiff's individual capacity claims are further barred for failure to state a claim, and because of qualified immunity, because of the related doctrines of <u>res judicata</u> and collateral estoppel, because special factors counsel hesitation in the creation of a <u>Bivens</u> remedy,[2] and because the statute of limitations bar the claims.  If Plaintiff is seeking to challenge the revocation of a security clearance, her claims fail because her security clearance denial is an issue which is not reviewable under <u>Dep't of Navy</u> v. <u>Egan</u>, 484 U.S. 518, 528 (1988).

_____

[2] <u>See</u> <u>Bivens</u> v. <u>Six Unknown Named Agents</u>, 403 U.S. 388 (1971).

Plaintiff has several times before complained that she was wrongly precluded from continuing her employment as a contractor with the Internal Revenue Service (in the Global High Wealth component).  Although the Court has ruled against her on the merits and thereafter concluded that res judicata bars her repeated litigation, Plaintiff again, sues her former co-workers at Global High Wealth (Donna Hansberry, Donna Prestia and Thomas Collins).  She also now adds as defendants employees at the Department of Homeland Security (the Coast Guard) and two Coast Guard employees, claiming that  an unfavorable suitability determination was based on false information that she believes came from Defendants Hansberry, Prestia and Collins.  Complaint, ¶¶ 24-36.  Plaintiff's Complaint contains two counts: Count I, based on the Privacy Act and Count II based on asserted Due Process violations by Coast Guard employees Thomas Harker and James Trommatter when she was allegedly fired from her job as a contractor with the Coast Guard.  Her claims are subject to dismissal for the reasons set forth herein.

## II.  PLAINTIFF'S PRIOR LITIGATION

### A.  Civil Action No. 12-1153 BAH

Plaintiff previously brought suit against the Secretary of Treasury, the Department of the Treasury, as well as Defendants Hansberry, Prestia and Collins in their individual and official capacities.  ECF No. 1 in Civil Action No. 12-1153.[3]   In that action, Plaintiff instituted claims based on her termination from work at the Internal Revenue Service ("IRS") on May 28, 2011.  Id. at 1.  Plaintiff asserted that she was fired because "GHW [Global High Wealth, a component

---

[3] Federal Defendants ask that the Court take judicial notice of the documents referenced in this memorandum.  See Fed. R. Evid. 201; Dupree v. Jefferson, 666 F.2d 606, 608 n. 1 (D.C. Cir. 1981) (this court has authority to judicially notice related proceedings in other courts); see also Jankovic v. Int'l Crisis Group, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (taking judicial notice of exhibits in the record of another court proceeding).

of the IRS] falsely accused her of lying on her pre-empolyment application" and made those

"false and defamatory reasons "part of Plaintiff's personnel file which is available to other

agencies within the federal government and to prospective employers." Id. at 1 and ¶¶ 16, 19.

Plaintiff sought, inter alia, expungement of records, reinstatement, damages, back pay and front

pay. Id. at 6-7.

In a decision filed November 24, 2015, the Court granted Defendants' dispositive motion

after five months of discovery, writing as follows:

> The plaintiff, a tax attorney and Certified Public Accountant, began
> working for the Department of Treasury in its Global High Wealth group
> ("GHW") within the Internal Revenue Service as a probationary employee on
> June 21, 2010. Def.'s Statement of Material Undisputed Facts ("Def.'s SMF") ¶ 1,
> ECF No. 63-1; Def.'s Mot. Ex. A ("Notification of Personnel Action, dated June
> 23, 2010") at 13, ECF No. 63-2. During the plaintiff's probationary employment
> with GHW, the federal government conducted a background investigation into the
> plaintiff's prior employment history. Def.'s SMF ¶¶ 5–8.  In support of this
> investigation, the plaintiff, was required to complete an Electronic Questionnaire
> for Investigations Processing ("E-QIP"), listing every place of her employment in
> the last ten years, including the reasons for termination, as well as any periods of
> unemployment. *See generally* Def.'s Mot. B ("Pl.'s E-QIP"), ECF No. 63-3.  The
> government, as part of the investigation, interviewed the plaintiff and a number of
> her former employers to verify the reasons for her termination, if any, and to
> determine whether the plaintiff had any "previous employment issues." *See* Def.'s
> Mot. Ex. B ("Interview Notes for Pl.'s Background Check") at 104, 105, ECF No.
> 63-3.
> The background investigation of the plaintiff revealed two discrepancies:
> First, the plaintiff indicated on her résumé, under "Work Experience," that she
> worked as a "Senior Tax Manager/Senior Tax Analyst" at a firm called
> "Ashbourne & Company" for over five years, from January 2002 to May 2007,
> Def.'s Mot. Ex. A ("Pl.'s Application") at 22, ECF No. 63-2. The investigation
> found that during this time period, however, the plaintiff was self-employed,
> Interview Notes for Pl.'s Background Check at 113, held various temporary and
> full-time positions and, in between temporary jobs, received unemployment
> benefits, Pl.'s E-QIP at 46–57. Second, the plaintiff claimed that she resigned one
> position as a result of restrictive working conditions imposed by the employer and
> his wife, *id.* at 59, but the investigation revealed a discrepancy between this stated
> reason and the reasons described by this former employer in a signed affidavit.
> The former employer stated in the affidavit that the plaintiff had been terminated
> for failure to follow instructions and for missing a project deadline due to an
> unexcused absence of three days. Def.'s Mot. B ("Former Employer Aff.") at 125,

ECF No. 63-3.

On May 10, 2011, before the end of the plaintiff's probationary period, but after almost eleven months of satisfactory work, Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n") Ex. S ("Pl.'s Employee File") at 57, ECF No. 89-3, the Agency sent the plaintiff a notice of proposed termination because the plaintiff provided misleading information leading to the two discrepancies uncovered in the background investigation. Def.'s Mot. Ex. D ("Proposed Termination Letter, dated May 10, 2011") at 2, ECF No. 63-5. The plaintiff was given an opportunity to "respond ... in writing and to furnish affidavits and evidence in support." *Id.*

On May 19, 2011, the plaintiff submitted a written response to the proposed termination letter, addressing the two discrepancies. Def.'s Mot. Ex. D ("Pl.'s Resp. to Proposed Termination, dated May 19, 2011") at 4–8, ECF No. 63-5.  The plaintiff explained, first, that Ashbourne & Company was her sole proprietorship, which "automatically" came into legal existence when she marketed the company and "received W-2s for temporary work." *Id.* at 5. Second, the plaintiff challenged the veracity of her former employer's affidavit, alleging that she received "an extra bonus check" three weeks after she left the firm and that she "do[es] not believe that these additional payments represent rewards for an employee who was terminated for poor work performance." *Id.* at 8. She further alleged that this former employer was engaging in "unauthorized practice of law," as "an unlicensed attorney ... preparing wills and trust documents," and cited this allegation as an additional reason for her resignation from that position. *Id.* at 7.

On May 26, 2011, the Agency notified the plaintiff that, after considering her written response, the Agency's initial determination that the plaintiff provided misleading information remained unchanged, and that her termination would become effective on May 28, 2011. Def.'s Mot. D ("Termination Letter, dated May 26, 2011") at 23, ECF No. 63-5.

* * *

As noted, *supra* n.1, in September and November, 2011, the plaintiff filed three separate lawsuits in the United States District Court for the District of Maryland, which claims were ultimately consolidated in the single, Consolidated Amended Complaint, ECF No. 49. The plaintiff alleges that the Agency violated two sections of the Privacy Act, 5 U.S.C. §§ 552a(g)(1)(C) and (g)(1)(D), Consol. Compl. ¶ 1, in the following three ways: (1) failing to maintain accurate, relevant, timely and complete records, *id.*, First and Second Causes of Action; (2) violating the fairness standard by allowing a supervisor "to opine" that GHW "had believed" her former employer's "account, and not Plaintiff," *id.*, Third Cause of Act; and (3) making improper disclosures to unauthorized employees and failing to redact her social security number and date of birth from documents, *id.* Fourth Cause of Action.

<u>Ashbourne</u> v. <u>Hansberry</u>, Civil Action No. 12-1153 BAH, 2015 WL 11303198, at *2–3 (D.D.C.

Nov. 24, 2015).  The Court summnarized the claims as follows:

The Agency terminated the plaintiff after determining that she "provided misleading information during the pre-employment process regarding the use of Ashbourne & Company" and regarding the circumstances surrounding her departure in 2001 from a former employer. Proposed Termination Letter, dated May 10, 2011 at 2; Termination Letter, dated May 26, 2011 at 23.  <u>Ashbourne</u> v. <u>Hansberry</u>, No. 12-CV-01153 (BAH), 2015 WL 11303198, at *6 (D.D.C. Nov. 24, 2015).  The Court concluded that the Agency did not rely on inaccurate records to determine Plaintiff provided misleading information regarding the use of Ashbourne & Company; that the Agency did not rely on inaccurate records to determine the plaintiff provided misleading information regarding her departure from a former employer; and that plaintiff failed to state a claim under § 522a(g)(1)(D) that Plaintiff's records were improperly disclosed. <u>Ashbourne</u> v. <u>Hansberry</u>, 2015 WL 11303198, at *7-10.

### B.  Civil Action No. 16-908

Plaintiff thereafter reinstitued her claims in <u>Ashbourne</u> v. <u>Hansberry</u> in which the Court

ruled as follows:

This matter and *Ashbourne I* plainly implicate the same cause of action. Although Plaintiff has pursued different legal claims in this matter than *Ashbourne I*, both matters arise out Plaintiff's termination from the Treasury Department, and certain alleged adverse employment actions that were taken in relation to that termination, and therefore share the "same nucleus of facts." *Compare* Compl. ¶¶ 8–25 (describing circumstances of Plaintiff's termination from the Treasury Department), *with* Amended Compl. ¶¶ 20–40 (same), ECF No. 49, *Ashbourne I*; *see Coleman v. Potomac Elec. Power Co.*, 310 F.Supp.2d 154, 160 (D.D.C. 2004) ("The Court also finds that Mr. Coleman's discharge, which might otherwise be timely raised, cannot be re-litigated under a Title VII or DCHRA theory when it has already been tried, and formally dismissed, as an alleged violation of the FMLA."), *aff'd*, No. 04-7043, 2004 WL 2348144 (D.C.

Cir. Oct. 19, 2004); *Gresham v. D.C.*, 66 F.Supp.3d 178, 189 (D.D.C. 2014) ("Because Plaintiff does not identify any reason that prevented him from asserting employment discrimination claims on the basis of race in that suit, he is not entitled to another bite of the same factual apple now."). Furthermore, both actions involved the same parties, and *Ashbourne I*, for the reasons stated, reached a final, valid judgment on the merits, before a court of competent jurisdiction.

Plaintiff contends, however, that dismissal is not warranted on the basis of res judicata because she requested a "right-to-sue" letter from the EEOC, and moved to stay proceedings in *Ashbourne I* on February 11, 2013 to await the decision of the EEOC. Opp'n Mem. at 9. However, the public docket in *Ashbourne I* reflects no motion to stay on February 11, 2013, and in fact, the only motion to stay on the docket was filed by Defendants due to a lapse of government funding. Mot. for a Stay, ECF No. 47, *Ashbourne I*. Furthermore, although Plaintiff cites an exhibit attached to her opposition brief as the purported motion to stay, that document is styled as "Plaintiff's Responses to Defendant's Statement of Material Facts," and contains no mention of a motion to stay. Opp'n Mem. at 9–10; Opp'n Mem., App. M. In short, Plaintiff's assertion in her opposition brief that she moved for a stay in *Ashbourne I* is belied by the public docket in that case, and is otherwise unsupported by competent evidence.[3]

Plaintiff also seems to contend that she was not required to pursue her race and gender discrimination claims in *Ashbourne I* while those claims were pending with the EEOC. However, numerous federal courts have held that "Title VII claims are not exempt from the doctrine of res judicata where plaintiffs have neither sought a stay from the district court for the purpose of pursuing Title VII administrative remedies nor attempted to amend their complaint to include their Title VII claims." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714–15 (9th Cir. 2001); *see also Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (holding that Title VII claims were barred by res judicata even though appellants claimed to have not received their right to sue letters); *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (holding that appellant's Americans with Disabilities Act claim was barred by res judicata even though appellant claimed that the EEOC had failed to furnish him with a right to sue letter); *Alford*, 60 F.Supp.3d at 127–30; *Robinson v. District of Columbia*, No. 99–1694, 2000 U.S. Dist. LEXIS 14476, at *9–*11 (D.D.C. Sept. 30, 2000) (collecting additional appellate decisions from the Second, Third, Sixth, and Seventh Circuits, and concluding that, "[a]s every court of appeals to have addressed the issue has held, the pendency of an EEO complaint in the administrative process does not alter the res judicata effect of a previously adjudicated civil action based on the same set of facts").

In this case, Plaintiff could have pursued her Title VII claims in *Ashbourne I*, but did not seek to amend the complaint in that action to include those claims, nor has Plaintiff presented any credible evidence that she sought a stay of that action to pursue her appeal with the EEOC.

* * *

Accordingly, the Court has concluded that this matter presents the same cause of action as *Ashbourne I*, which involved the same parties, and wherein a court of competent jurisdiction issued a final decision on the merits. This action is therefore barred in its entirety by the doctrine of res judicata, and that determination is unaffected by the pendency of Plaintiff's Title VII claims with the EEOC at the time she pursued her other claims in *Ashbourne I*.[4]

Ashbourne v. Hansberry, No. CV 16-908 (CKK), 2017 WL 1183936, at *4–6 (D.D.C. Mar. 29, 2017).

III.  GENERAL LEGAL STANDARDS

Defendants seek dismissal of the Complaint pursuant, inter alia, to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.[4]  A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be presented as a facial or factual challenge. "A facial challenge attacks the factual allegations of the complaint that are contained on the face of the complaint, while a factual challenge is addressed to the underlying facts contained in the complaint." Al-Owhali v.

---

[4] To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of defendants.  See Fed. R. Civ. P. 12(b); 56.  Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless she submits her own affidavit or other proper, documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Ashcroft, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (internal quotations and citations omitted).

When defendants make a facial challenge, the district court must accept the well-pleaded

allegations contained in the complaint as true and consider the factual allegations in the light

most favorable to the non-moving party.  Erby v. United States, 424 F. Supp. 2d 180, 182

(D.D.C. 2006).  With respect to a factual challenge, the district court may consider materials

outside of the pleadings to determine whether it has subject matter jurisdiction over the claims.

Jerome Stevens Pharmacy, Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The Plaintiff

bears the responsibility of establishing the factual predicates of jurisdiction by a preponderance

of evidence.  Erby, 424 F. Supp. 2d at 182.

> Federal courts are courts of limited jurisdiction.  They possess only that
> power authorized by Constitution and statute, see Willy v. Coastal Corp., 503
> U.S. 131, 136–137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992); Bender v.
> Williamsport Area School Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89
> L.Ed.2d 501 (1986), which is not to be expanded by judicial decree, American
> Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).  It is
> to be presumed that a cause lies outside this limited jurisdiction, Turner v. Bank
> of North America, 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799), and the burden of
> establishing the contrary rests upon the party asserting jurisdiction, McNutt v.
> General Motors Acceptance Corp., 298 U.S. 178, 182–183, 56 S.Ct. 780, 782, 80
> L.Ed. 1135 (1936).

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).

> "If sovereign immunity has not been waived, a claim is subject to
> dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." Clayton v.
> District of Columbia, 931 F.Supp.2d 192, 200 (D.D.C. 2013) (citing FDIC v.
> Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("Sovereign
> immunity is jurisdictional in nature.")). Courts "may not find a waiver unless
> Congress' intent is 'unequivocally expressed' in the relevant statute." Hubbard v.
> Adm'r, EPA, 982 F.2d 531, 532 (D.C. Cir. 1992) (quoting United States v.
> Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)).

Johnson v. Veterans Affairs Med. Ctr., 133 F. Supp. 3d 10, 14 (D.D.C. 2015).

In order to survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations

that are sufficiently detailed "to raise a right to relief above the speculative level." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007).  As with facial challenges to subject-matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6). Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006).  However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557) (internal quotations omitted).  Further, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 678.

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id.  The Court may consider facts developed in the record beyond the complaint. Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992) (in disposing of motion to dismiss for lack of subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts"). "[T]he district court may consider materials outside the pleadings." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Belhas v. Ya'alon, 515 F.3d 1279, 1281 (D.C. Cir. 2008) (examining materials outside the pleadings in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction); Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (noting that courts may consider materials outside the pleadings in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction).

Similarly, the Court may consider matters referenced in the Complaint.   In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## IV.  ARGUMENT

### A.  The Individual Capacity Claims

Plaintiff's individual-capacity claims are subject to dismissal under Fed. R. Civ. P. 12(b)(1), (2), (4), (5), and (6).  The individual defendants are also protected by immunity, and special factors counsel hesitation in the creation of a Bivens remedy here.  Moreover, res judicata/collateral estoppel bars the claims insofar as they are based on allegations that were or could have been presented in her prior litigation with employees at the Internal Revenue Service ("IRS").  The Privacy Act claims cannot be brought against an individual agency employee.

#### 1.  Lack of Proper Service and Personal Jurisdiction

This Court is without personal jurisdiction over the individual Defendants in the absence of proper service.  It is well established that, in an action against a federal employee in an individual capacity, the individually-sued defendant must be served with process in accordance with rules applicable to individual defendants.  See Simpkins v. District of Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997); Lawrence v. Acree, 79 F.R.D. 669, 670 (D.D.C. 1978); Navy, Marshall & Gordon v. U.S. International Development-Corporation Agency, 557 F. Supp. 484, 489 (D.D.C. 1983); Delgado v. Bureau of Prisons, 727 F. Supp. 24 (D.D.C. 1989); Williams v. GEICO Corp., 792 F.Supp.2d 58, 66 (D.D.C. 2011); Chen v.

District of Columbia, 256 F.R.D. 263, 266 (D.D.C. 2009) (dismissing claim against defendant where Plaintiff merely mailed a copy of the summons and complaint to the defendant's place of work); Leichtman v. Koons, 527 A.2d 745, 747 and n.5 (D.C. 1987) (Office employee with authority to receive business mail does not, by virtue of his or her position, have authority to receive process, and actual knowledge of the existence of a lawsuit is no substitute for personal service).  And, under Fed. R. Civ. P. 12(b)(5), a party can move to dismiss for insufficient service of process. Id.; Hammond v. Federal Bureau of Prisons, 740 F.Supp.2d 105, 108 (D.D.C. 2010) ("'[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.'"  Hammond, 740 F.Supp.2d at 108 (citation omitted).

Where, as here, a plaintiff seeks relief against a defendant in an individual capacity, the Court must acquire personal jurisdiction in order to enter a binding judgment, Reuber v. United States, 750 F.2d 1039, 1049 (D.C. Cir. 1984); Dominguez v. District of Columbia, 536 F.Supp.2d 18, 22 (D.D.C. 2008); Griffith v. Nixon, 518 F.2d 1195 (2d Cir.), cert. denied, 423 U.S. 995 (1975), and the general rule is that a plaintiff has the burden of establishing personal jurisdiction.  Reuber, supra at 1052.  Similarly, the party on whose behalf service is made has the burden of establishing its validity when challenged.  See Chen v. District of Columbia, 256 F.R.D. at 266); see also Hammond, 740 F.Supp.2d at 108.  The record does not establish any efforts by Plaintiff to serve the Defendants within the time allowed by Fed, R. Civ. 4(m).  Accordingly, absent proper service, Plaintiff's claims are subject to dismissal.[5]

---

[5] Under some circumstances, additional opportunities may be available to a plaintiff to effect proper service on a defendant in a civil action.  See Fed. R. Civ. P. 4(i)(4); Moore v. Agency for International Development, 994 F.2d 874 (D.C. Cir. 1993).  However, in light of the

2. Res Judicata/collateral estoppel

Plaintiff's claims are barred by res judicata and collateral estoppel.

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." Sheppard v. District of Columbia, 791 F.Supp.2d 1, 4 (D.D.C. 2011) (citing I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 946 (D.C. Cir. 1983)). Under claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction. See Porter v. Shah, 606 F.3d 809, 813 (D.C. Cir. 2010); Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006) (citing Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 323–24, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948)); Herrion v. Children's Hosp. Nat'l Med. Ctr., 786 F.Supp.2d 359, 368 (D.D.C. 2011).

Moreover, a " 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)) (emphasis in original); see also Int'l Union v. Clark, No. 02–1484, 2006 WL 2598046, at *12 n. 19, 2006 U.S. Dist. LEXIS 64449, at *46 n.19 (D.D.C. Sept. 11, 2006) ("[I]ndividual who did properly exhaust his administrative remedies ... is nevertheless barred from maintaining his Rehabilitation Act claim in this case because he litigated that claim to a judgment on the merits in [another] case.... The doctrine of res judicata therefore applies to [that plaintiff]'s claim and requires dismissal of his claim.").
Peters v. District of Columbia, 873 F. Supp. 2d 158, 176–77 (D.D.C. 2012); accord Ashbourne v.

Hansberry, No. CV 16-908 (CKK), 2017 WL 1183936, at *4–6.

Here, Plaintiff has attempted to pursue the claims involving the Department of Treasury

and its employees on several prior actions. As the Court suggested in its decision in Ashbourne

---

several other reasons calling for dismissal of Plaintiff's claims, no purpose would be served by the calling for additional efforts to effect proper service in this action. See Simpkins v. District of Columbia Government, 108 F.3d at 370 (dismissing baseless Bivens claims on the merits notwithstanding lack of proper service). Indeed, if the Court were to conclude that Plaintiff's claims are not subject to dismissal on the several other grounds set forth in this memorandum, The individual defendants should be given the opportunity to determine whether they would be willing to waive any defense based upon Fed. R. Civ. P. 12(b)(2), (4) or (5). Defendants Hansberry and Colins are, however, not prepared to do so at this time.

v. <u>Hansberry</u>, No. CV 16-908 (CKK), 2017 WL 1183936, at *4–6, enough is enough.  Plaintiff's

claims that her IRS records were falsified, indeed, any claim that was or could have been brought

in her prior litigation, may not proceed in light of <u>res judicata</u> and collateral estoppel.[6]  <u>Id.</u>

### 3.  Individual Privacy Act Claims Do Not Exist

Plaintiff claims to name the individual defendants in both their official and individual

capacities.  Defendants Hansberry and Collins are not named in Count II, but they appear to be

so named in Count I (the Privacy Act claims).  <u>See</u> Complaint, ¶¶ 2-6.

> The Privacy Act provides that the term "agency" means "agency" as
> defined by the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(f). <u>See</u> 5
> U.S.C. § 552a(a)(1); <u>Dong</u> v. <u>Smithsonian Inst.</u>, 125 F.3d 877, 878 (D.C. Cir.
> 1997) (holding that the Privacy Act "borrows the definition of 'agency' found in
> FOIA").  FOIA, in turn, defines "agency" as "any executive department, military
> department, Government corporation, Government controlled corporation, or
> other establishment in the executive branch of Government (including the
> Executive Office of the President), or any independent regulatory agency." 5
> U.S.C. § 552(f).

<u>Jones</u> v. <u>Executive Office of President</u>, 167 F.Supp.2d 10, 13-14 (D.D.C. 2001); <u>accord</u> <u>Martinez</u>

v. <u>Bureau of Prisons</u>, 444 F.3d 620, 624 (D.C. Cir. 2006) (The Privacy Act does not authorize

claims against individuals, and district court properly dismissed the named individual defendants

because no cause of action exists that would entitle appellant to relief from them under the

Privacy Act); <u>Earle</u> v. <u>Holder</u>, 815 F. Supp. 2d 176, 180 (D.D.C. 2011), <u>aff'd</u>, No. 11-5280, 2012

WL 1450574 (D.C. Cir. Apr. 20, 2012); <u>Lynn</u> v. <u>Lappin</u>, 593 F. Supp. 2d 104, 105-06 (D.D.C.

---

[6] Plaintiff alleges that it is her "belief that" defendants Hansberry and Collins (as well as
Prestia) disclosed information to Defendants Harker and Trommatter.  This unsupported and
non-factual suggestion does not satisfy the pleading requirements of the Federal Rules.  <u>See</u>
<u>Ashcroft</u> v. <u>Iqbal</u>, ; <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. at 555.  In any event, Plaintiff cannot
properly amend her claim and be consistent with Fed. R. Civ. P. 11(b), because Defendants
Hansberry and Collins have not had any such communications.  <u>See</u> Declaration of Donna C.
Hansberry (Exhibit 4), ¶¶ 1-3; Declaration of Thomas V. Collins (Exhibit 5), ¶¶ 1-3.

2009).  Thus, the claims against Defendants Hansberry and Collins (as well as the remaining individual defendants intended to be encompassed within Count I) should be dismissed.

4.  Failure To State A Claim and Qualified Immunity

In Count II of the Complaiunt, Plaintiff argues that Defendant Harker and Trommatter deliberately falsified Plaintiff's personnel records and did not give Plaintiff a meaningful opportunity to be heard before action was taken against her.  Complaint, ¶¶ 23, 37-38.[7]  But Plaintiff has failed to raise Constitutional claims against these defendants by virtue of their employment with the Coast Guard.  Although Plaintiff cites the 5th and 14th Amendments and asserts the existance of a Liberty Interest and Property interest, Complaint at 8-9, those claims are subject to dismissal as Plaintiff has failed to state a claim for relief and she has certainly failed to allege facts to support a claim that withstands the defense of qualified immunity.  See infra at 28-32.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  It is well settled that government officials such as the individual defendants in this case enjoy a qualified immunity from constitutional and statutory claims against them.  See Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Anderson v. Creighton, 483 U.S. 635, 640 (1987); Cleavinger v. Saxner, 474 U.S. 193, 206 (1985); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985);

---

[7] Plaintiff does not name Defendants Hansberry, Prestia or Collins in Count II of the Complaint, but even assuming that their actions which are alleged to have resulted in Plaintiff's renmoval from the Department of Treasury could be said to form some part of the claim, those actions took place in May 2011.  Complaint, ¶¶ 2-4.  They would, therefore, be time-barred.  See D.C. Code § 12-301(4) and infra at 20.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity analysis was explained in Harlow:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818.  And, a defendant's subjective good faith is not relevant to the qualified immunity analysis, id. at 815-18; rather in making this assessment, the Supreme Court said a right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.  Conversely, an official is not shielded from liability where he "could be expected to know that certain conduct would violate statutory or constitutional rights." See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998); accord Siegert v. Gilley, 500 U.S. 226, 231-32 (1991) (A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all); see also Wilson v. Layne, 526 U.S. 603, 609 (1999)(A court performing a qualified immunity inquiry must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right.); Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 70-71 (D.D.C. 2005).

The whole purpose of qualified immunity is to protect public officials "from the costs associated with the defense of damages actions" by rooting out meritless lawsuits at the earliest point possible in the litigation process.  Crawford-El v. Britton, 523 U.S. 574, 590 (1998).  As the Supreme Court explained in Davis v. Scherer, 468 U.S. 183, 197 (1984), "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the

-15-

time of the conduct at issue."  Moreover, "[e]ven defendants who violate constitutional rights

enjoy a qualified immunity that protects them from liability for damages unless it is further

demonstrated that their conduct was unreasonable under the applicable standard." Id. at 190.

Thus, in developing the doctrine of qualified immunity, the Supreme Court has sought to

strike a balance "between the interests in vindication of citizens' constitutional rights and in

public officials' effective performance of their duties." Anderson, 483 U.S. at 639 (quotation

omitted).  Recognizing that "bare allegations of malice should not suffice to subject government

officials either to the costs of trial or to the burdens of broad-reaching discovery,"  Harlow, 457

U.S. at 817-18, the Court balanced those competing interests by establishing a higher threshold

for holding public officials personally liable for constitutional violations.  For a public official to

be liable for damages, that official must have violated a constitutional right, and that right must

have been "clearly established" -- "[t]he contours of the right must be sufficiently clear that a

reasonable official would understand what he is doing violates that right."  Anderson, 483 U.S. at

640 ("qualified immunity protects 'all but the plainly incompetent or those who knowingly

violate the law'") (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Numerous circuits have placed the burden on the plaintiff to come forward with evidence

sufficient to create a genuine issue as to whether defendant's conduct was objectively reasonable

in light of clearly established law.  See, e.g., Salas v. Carpenter, 980 F.2d 299 (5th Cir. 1992);

Washington v. Newsom, 977 F.2d 991 (6th Cir. 1992); Stewart v. Baldwin County Bd. of Educ.,

908 F.2d 1499 (11th Cir. 1990); Hannon v. Turnage, 892 F.2d 653 (7th Cir. 1990); Pleasant v.

Lovell, 876 F.2d 787 (10th Cir. 1989).  And the Supreme Court's decision in Ashcroft v. Iqbal

556 U.S. 662, 678 (2009), reemphasizes the need for the Courts carefully to assess what facts (as

opposed to legal conclusions) are alleged and whether those facts suffice to satisfy the pleading

requirements applicable in Federal litigation.  See Ashcroft v. Iqbal, 556 U.S. at 678 (affirming dismissal where allegations failed to overcome qualified immunity).

In the past, this Court would have first determined whether a constitutional violation had occurred before considering whether the defendants were entitled to qualified immunity.  See Saucier v. Katz, 533 U.S. 194 (2001).  The law has now changed.  This Court need no longer consider whether the constitutional claim would have merit in the absence of qualified immunity.  Pearson v. Callahan, 555 U.S. 223, 235-36 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").  Pearson also reiterated that to overcome the defense of qualified immunity, the plaintiff must establish the violation of a clearly established right.  Pearson, 555 U.S. at 243-44.

For the reasons set forth herein, no individual defendant has violated any constitutional rights of Plaintiff's and, even if some violation could be identified from Plaintiff's allegations, the right was not so clearly established that Plaintiff's claims could withstand the defense of qualified immunity.  Thus, to the extent that Plaintiff is attempting to assert a Bivens claim, such a claim must fail on the basis of qualified immunity.   To overcome a government official's privilege of qualified immunity on a charge of alleged  constitutional violation, the unlawfulness of the official's action must be apparent in the light of pre-existing law; if the contours of the constitutional right that the official is accused of violating are not sufficiently clear that a reasonable official would understand what violates that right, the official is entitled not to be forced to litigate the consequences of his official conduct.  Liff v. Office of the Inspector Gen.

for the U.S. Dep't of Labor, 156 F. Supp. 3d 1 (D.D.C. 2016), on reconsideration in part, No. CV 14-1162 (JEB), 2016 WL 6584473 (D.D.C. Nov. 7, 2016).

Plaintiff suggests that because Defendants Harker and Trommatter are alleged to have acted intentionally when they disseminated information about her she hs a viable claim. Complaint, ¶¶ 33.  It cannot be said, however, that release of derogatory information about an individual constitutes a constitutional violation, and certainly not one that was clearly established.  See Siegert v. Gilley, 500 U.S. 233 ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation").  Here, Plaintiff received notice and an opportunity to be heard on the allegations against her.  Exhibit 1, Exhibit 2.  Thus, if any process werew constitutionally required, she received all that she was due.  See Doe v. Cheney, 885 F.2d 898, 909-10 (D.C. Cir. 1989).

5.  Special Factors Counsel Hesitation in The Creation Of A Bivens Remedy.

The courts have long recognized that special factors counseling against the creation of an alternative Bivens-type remedy must be recognized where a comprehensive statutory scheme has been established to provide relief in a given area or where other reasons (such as separation of powers principles) counsel hesitation. See Ziglar v. Abbasi, 137 S.Ct. 1843, 2017 WL 2621317 at *10-*24 (June 19, 2017);[8] Wilson v. Libby, 535 F.3d 697, 704-10 (D.C. Cir. 2008) (concluding that the Privacy Act constitutes a special factor precluding a Bivens remedy, even though the statute does not afford complete relief to the plaintiffs); Davis v. Billington, 681 F.3d 377, 381-82 (D.C. Cir. 2012); Mittleman v. U.S. Treasury, 773 F. Supp. 442, 454 (D.D.C. 1991)

_____

[8] The Court in Ziglar made clear that in only three narrowly-circumscribed instances is a special factors analysis not required, where the Court had already recognized Bivens claims: 1) fourth amendment claims of unreasonable searches and seizures; 2) firing a woman from a job with a Congressman based on gender; and 3) failing to treat a prisoner's serious medical need. Ziglar, 2017 WL 2621317 at *9-*14.

(Privacy Act bars plaintiff's constitutional claims); <u>Weiss</u> v. <u>Int'l Bhd. of Elec. Workers</u>, 729 F. Supp. 144, 147 (D.D.C. 1990) (to the extent that plaintiff's emotional injuries were the result of the stressful work situation created by the defendant, her claim of intentional infliction of emotional distress must be dismissed as subsumed within Title VII); <u>Bush</u> v. <u>Lucas</u>, 462 U.S. 367 (1983) (comprehensive procedural and substantive provisions of the Civil Service Reform Act constitute "special factors" counseling hesitation against a <u>Bivens</u> remedy); <u>Spagnola</u> v. <u>Mathis</u>, 859 F.2d 223, 229-30 (D.C. Cir. 1988) (en banc) (recognizing the exclusivity of the Civil Service Reform Act's remedies); <u>see also</u> <u>Bush</u> v. <u>Lucas</u>, 462 U.S. 367 (1983) (comprehensive procedural and substantive provisions of the Civil Service Reform Act constitute "special factors" counseling hesitation against a Bivens remedy); <u>Schweiker</u> v. <u>Chilicky</u>, 487 U.S. 412 (1988) (Social Security Disability Benefits Reform Act of 1984); <u>Brown</u> v. <u>GSA</u>, 425 U.S. 820 (1976) (Title VII is the sole remedy for federal employees complaining of job discrimination on account of sex or race); <u>Gleason</u> v. <u>Malcomb</u>, 718 F.2d 1044, 1048 (11th Cir. 1983) (special factors counsel against a <u>Bivens</u> remedy where plaintiff could have sought equitable relief pursuant to the Administrative Procedure Act ("APA")); <u>GasPlus, L.L.C.</u> v. <u>U.S. Dep't of Interior</u>, 466 F. Supp. 2d 43, 50 (D.D.C. 2006) (APA constitutes special factor warranting dismissal of *Bivens* claims); <u>Dearsman</u> v. <u>Kurtz,</u> 516 F. Supp. 1255, 1259-60 (D.D.C. 1981) (Civil Service Reform Act and Title VII constituted exclusive remedies for adverse actions and discrimination in the federal workplace, precluding plaintiff's due process claims); accord <u>United States</u> v. <u>Stanley</u>, 483 U.S. 669, 683-84 (1987) (special factors counselling hesitation include the unique disciplinary structure of the Military Establishment and Congress's activity in the field).

Here, as Plaintiff seems to recognize, she had available to her the remedies in the Privacy Act and the Administrative Procedure Act, should if she had had some concern about her

treatment with the Defendant agencies.  Moreover, Congress has made available certain remedies to those performing government jobs in the Civil Service Reform Act and Title VII.  Those potential causes of action counsel hesitation in the creating of a <u>Bivens</u> remedy here. Accordingly, Plaintiff's <u>Bivens</u>  claims should be rejected.

> 6.  <u>Statute of Limitations</u>

As noted above, Plaintiff's efforts to base a constitutional claim on the asserted defamatory falsehoods would be time-barred under the applicable statute of limitatuions.  <u>See Doe</u> v. <u>United States Department of Justice</u>, 753 F.2d 1092, 1114 & n.28 (D.C. Cir. 1985) (applying one-year statute of limitations of DC Code § 12-301(4) to claims of cases involving alleged damage to reputation); <u>McClam</u> v. <u>Barry</u>, 697 F.2d 366, 372-74 (D.C. Cir. 1983) (constitutional claim based on assault during alleged false arrest was most closely analogous to a claim under D.C. Code § 12-301(4)) (overruled on other grounds in <u>Brown</u> v. <u>United States</u>, 752 F.2d 1498 (D.C. Cir. 1983)).[9]

---

[9] Defendants recognize that the Supreme Court has reached a different conclusion in addressing Section 1983 actions.  <u>See Wilson</u> v. <u>Garcia</u>, 471 U.S. 261, 271-72 (1985) (applying statutory construction principles to Section 1983 and concluding that the personal injury limitations period would presumably apply).  A <u>Bivens</u> action, however, is not created by statute; and Plaintiff's claims are most like those described in D.C. Code § 12-301(4). <u>See</u> <u>Banks</u> v. <u>Chesapeake and Potomac Telephone Co.</u>,  802 F.2d 1416, 1429,  (D.C. Cir. 1986) (<u>citing</u> <u>McClam</u>, 697 F.2d at 372-74).  Courts have, in Defendants' view, incorrectly assumed that the statutory analysis applied in <u>Wilson</u> should also be applied in the <u>Bivens</u> context.  <u>See e.g.</u>, <u>Harris</u> v. <u>United States</u>,  422 F.3d 322, 331 (6th Cir. 2005).  To defendants' knowledge this Circuit has not accepted this invitation to treat <u>Bivens</u> claims as if they are subject to the statutory analysis applied in <u>Wilson</u>.  <u>Bivens</u> claims are uniquely creatures of Federal common law, and as such they cannot and should not be treated uniformly, as contemplated in <u>Wilson</u>. Instead, local law has elected to separate common law claims as subject to differing limitations periods, depending on the nature of the claim.  This practice should continue to be followed unless and until the District of Columbia adopts a separate limitations period for <u>Bivens</u> claims. <u>See</u> <u>Banks</u> v. <u>Chesapeake and Potomac Telephone Co.</u>, 802 F.2d at 1429.  <u>Wilson</u> is simply too thin a reed upon which to overrule this Circuit's binding precedent.  <u>See</u> <u>Transohio Sav. Bank</u> v. <u>Dir., OTS</u>, 967 F.2d 598, 613 (D.C. Cir. 1992) ("Without more certain direction from the Supreme Court, we decline to overrule this Court's very specific holdings").

## B.  The Official Capacity Claims

### 1.  The Privacy Act

Plaintiff is contesting under the Privacy Act the accuracy of records which she authored. Plaintiff seeks to have the Coast Guard correct records, but has indicated neither how they are inaccurate nor how they should be corrected.   Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  The pleading standard of Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.

#### a.  The Plaintiff Cannot Satisfy the Elements of Subsection (g)(1)(C) As a Matter of Law

The Privacy Act requires agencies to "maintain all records which are used by the agency in making any determination about any individual" accurately and completely as is reasonably necessary to assure fairness to the individual in the determination. 5 U.S.C. § 552a(e)(5).  The Act provides for damages in the event an agency fails to perform this duty. 5 U.S.C. § 552a(g). The Privacy Act does not require the Agency to maintain perfect records. The Agency satisfies its obligations under the Privacy Act if its records are reasonably accurate. See, e.g., Johnston v. Horne, 875 F.2d 1415, 1421-22 (9th Cir. 1989). The Privacy Act also provides for an award of damages in the event the Agency intentionally or willfully fails to properly maintain the records. 5 U.S.C. § 552a(g)(4).

In order to recover damages under § 522a(g)(1)(C), the plaintiff must "establish four elements: (1) [she] has been aggrieved by an adverse determination; (2) the [agency] failed to

maintain [her] records with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records."  Paige v. DEA, 665 F.3d 1355, 1358–59 (D.C. Cir. 2012); see also Ashbourne v. Hansberry, No. 12-CV-01153 (BAH), 2015 WL 11303198, at 6 (D.D.C. Nov. 24, 2015).  Plaintiff must "show not only that the inaccurate records were considered in making the determination, but that an error in the records *caused* the determination." Deters v. U.S. Parole Comm'n, 85 F.3d 655, 657 (D.C.Cir.1996);  see also Thompson v. Dep't of State, 400 F. Supp. 2d 1, 19 (D.D.C.2005).

Plaintiff has not alleged any facts, if taken to be true, that the Department of Homeland Security ("DHS") failed to maintain her records "with the degree of accuracy necessary to assure fairness" in denying her security clearance.  Doe v. U.S. Dept. of Justice, 660 F.Supp.2d 31, 43 (D.D.C. 2009).  Instead, Plaintiff asserts only unsupported rote accusations.  Plaintiff has alleged that DHS employees Thomas Harker and James Trommater "intentionally and deliberately failed to verify facts" (Complaint, ¶ 24) and "failed to collect information" (Complaint, ¶ 27) and "falsified Plaintiff's records" (Complaint, ¶¶ 35, 37).  Plaintiff, however, never indicates what records were not verified or were false.

To the extent that any potentially "false records" are specified at all, Plaintiff accuses her former supervisors at a previous IRS position of falsifying records related to her time at "Ashbourne & Company" and she asserts that the DHS employees relied on those records (Complaint, Introduction).   This assertion cannot support her 5 U.S.C. 552a(g) claim.  Indeed, in a the earlier lawsuit, Plaintiff filed against her Treasury supervisors while Plaintiff was on another contract assignment at the IRS (see Complaint, ¶ 2), the Court held that the issue related

to Ashbourne & Company and other claimed "falsified records" were not inaccurate under the

Privacy Act:

> None of these arguments present any factual inaccuracies, however; instead, they seek only to undermine the legitimacy of the Agency's judgment that the plaintiff's use of Ashbourne & Company on her résumé gave a misleading impression of steady and continuous work when, in reality, the plaintiff worked at a number of different places and only for months at a time.

Ashbourne v. Hansberry, No. 12-CV-01153 (BAH), 2015 WL 11303198, at *7 (D.D.C. Nov. 24,

2015).  Plaintiff makes no reference to other "falsified" or "inaccurate" records beyond the false

résumé statements.

       To the extent that plaintiff is accusing DHS of failing to maintain the records cited in the

SECCEN letter presented to Plaintiff on April 22, 2015 (see Complaint, ¶¶ 35-36), that letter

presents two charges.  First, a charge of "employment misconduct or negligence" resulting from

Plaintiff's uncontested and voluntary admission that she had been fired or quit after being told

she would be fired from a previous employer.  Second, a charge titled "dishonest conduct

(financial)" which recites only that Plaintiff had voluntarily answered "Yes" to the question of

"are you delinquent on any Federal debt?"  See  Exhibit 1 (April 22, 2015 Letter To Plaintiff

from J.D. Trommatter) at 3-4.  Plaintiff does not contest that she submitted these forms nor does

she dispute the authenticity of the SECCEN letter's statement; Plaintiff merely debates their

interpretation as "dishonest conduct" or "employment misconduct or negligence."  See Exhibit 2

(Plaintiff's Response, date stamped "2015 May 26") at 1-3.[10]

---

[10]  Counsel has redacted what appears to be Plaintiff's Socual Security Number and Date of birth from the exhibits.  See Local Civil Rule 5.4(f).

Even if Plaintiff does indeed intend to assert that the unspecified "records" refers to the SECCEN letter, Plaintiff cannot maintain a claim for failure to maintain accurate records, because Plaintiff submitted this information herself, voluntarily, and nowhere in her Complaint does she contest their validity.[11]   As such, Plaintiff fails prongs 2, 3, and 4 of the required elements of such a Privacy Act claim because the SECCEN letter's statements are not alleged to be inaccurate, Plaintiff never alleges her denial of any clearance was based on any other potentially inaccurate records, and Plaintiff presents no factual allegations that Defendants failed to verify, facts which she herself submitted as truthful under penalty of law. See Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1007 (D.C. Cir. 2009); Ashbourne v. Hansberry, No. 12-CV-01153 (BAH), 2015 WL 11303198, at 6.

### b.  The Plaintiff's Claim for Improper Release of Protected Information Must Fail as a Matter of Law

Plaintiff has failed to specify what information was released to whom, but to the extent that anything can be inferred from her complaint, the Coast Guard may have released information to her employer, but this release of information is lawful.

To establish a Privacy Act cause of action for improper release, the Plaintiff must establish, by a preponderance of the evidence, the following five elements regarding the allegedly unauthorized disclosure of information: (1) that the information allegedly disclosed is covered by the Act as a "record" contained in a "system of records;" (2) that the agency disclosed the information; (3) that the disclosure was without plaintiff's consent and did not fit

---

[11]   The April 22, 2015 SECCEN letter requests that Plaintiff provide her account of these charges within 30 days. Exhibit 1 at 1.  No such written reply was received during that time period.  Exhibit 2 (Plaintiff's Response).  Furthermore, the information recited in the SECCEN letter was provided by Plaintiff on Form OF 306 which she certified to be "truthful and complete" per the form's instructions.  Exhibit 3 at 2.

within one of the enumerated exceptions to the anti-disclosure provision; (4) that the disclosure

was willful or intentional; and (5) that the disclosure had an adverse effect on the plaintiff. 5

U.S.C.A. § 552a. Doe, 660 F.Supp.2d at 43; see also Fattahi v. Bureau of Alcohol, Tobacco &

Firearms, 186 F. Supp. 2d 656 (E.D. Va. 2002), aff'd, 328 F.3d 176 (4th Cir. 2003).

      This claim cannot proceed for several independent reasons. First, the claim fails to state a

claim for relief plausible on its face.  As outlined above, "a pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Iqbal,

556 U.S. at 678.  Detailed factual allegations are not necessary, but something more than a bare

accusation that defendants released *unspecified* information to *unspecified* parties is required.

See id.  Here, Plaintiff's entire claim consists of naked assertions that someone may have

distributed something to someone else.  Without further specificity, Plaintiff argues that DHS

employees "publicly disclosed Plaintiff's Privacy Act-protected information" (Complaint, ¶¶ 31-

33) of some sort, potentially to "Plaintiff's contracting firm, potential employers, and others".

(Complaint, ¶¶ 6 and 32).

      Second, to the extent that Plaintiff is arguing that the SECCEN letter was shared with her

employing contractor company, not only did plaintiff consent to the release of this information, it

also would be covered by the Routine Use Exception to the Privacy Act. 5 U.S.C. § 522a(b)(3).

See Ashbourne, 2015 WL 11303198, at 10.  Under the Privacy Act, the government generally

may not disclose records pertaining to an individual without that individual's written consent. 5

U.S.C.A. § 552a(b). Nat'l Aeronautics & Space Admin. v. Nelson, 562 U.S. 134 (2011).  The

Privacy Act permits disclosure of an individual's records for a number of reasons, including "for

a routine use as defined in subsection (a)(7). 5 U.S.C. § 522a(b)(3). "Routine use" is, in turn,

defined as "the use of such record for a purpose which is compatible with the purpose for which it was collected." § 522a(a)(7).  See also Ashbourne, 2015 WL 11303198, at *10.

Plaintiff provided her explicit consent by filling out the forms for her employment application.  In Plaintiff's previous Privacy Act lawsuit, the Court noted that "[i]n fact, the Plaintiff knew that the information collected during [an employment] investigation may be disclosed to her verifiers." Ashbourne, No. 12-CV-01153 (BAH), 2015 WL 11303198, at 10. Similarly, in this case, the OF 306 explicitly states that any information collected on the form may be grounds for termination or other legal action:  "All your answers must be truthful and complete. **A false statement on any part of this declaration or attached forms or sheets may be grounds for not hiring you, or for firing you after you begin work. Also, you may be punished by a fine or imprisonment (U.S. Code, title 18, section 1001)"** (bold in original). Exhibit 3 (OF306).

The information collected by the Coast Guard through Plaintiff's willful submission in contemplation of a security clearance determination is squarely in the routine use exception. Because the routine use of information is defined by "the purpose for which it was collected," sharing voluntarily submitted employment and financial debt default information collected in the scope of an application for a security clearance with those who employ the individual is entirely consistent with the purpose of that information.  Nelson, 562 U.S. at 156.

The "Routine Use" disclaimer on the OF306 itself identifies a number of related scenarios including release of this information to "non-agency members" for the purpose of an individual's "performance," "fitness for duty," or to "prospective non-Federal employers concerning tenure of employment." (See Exhibit 3).  There is little doubt, then, that when Plaintiff volunteered her previous employment and financial information in pursuit of a security

-26-

clearance for employment, that it would be used for the purpose of determining her eligibility.[12]

Moreover, she appears to allege that she was deemed ineligible to continue working with the

Federal government following an adverse suitability determination.  Her damages, thus, flowed

from that loss of access to government facilities, any subsequent indication that the adverse

finding precluded her work with DHS, was merely the lawful disclosure of information to those

within the agency (or its subcontractors) advising them of the adverse finding.  See Palmieri v.

United States, 72 F. Supp. 3d at 206 and n.7 (mere loss a government security clearance does not

constitute a public branding of disloyalty that can form the basis for a protected liberty or

property interest violation) (citing Hill v. Dep't of Air Force, 844 F.2d 1407, 1412 (10th

Cir.1988) (holding that, under Egan, the government's dissemination of information regarding

plaintiff's security clearance suspension, which plaintiff argued ''impugned [his] standing and

reputation,'' did not violate a liberty or property interest)).

Insofar as Plaintiff may be seeking to argue that she is entitled to damages on account of

information learned from the DHS that originated with Treasury, she cannot now relitigate the

accuracy of that information, for the same reasons that her individual capacity claims are barred

by res judicata, collateral stoppel.  See supra at 12-13.

### c. The Privacy Act's Statute of Limitations

Moreover, Plaintiff's Privacy Act claims that are based on actions that predate April 24,

2015, are time-barred.  The Privacy Act provides that:

---

[12] To the extent that plaintiff alleges her e-Qip application was unlawfully distritbuted, the e-Qip form has similar instructions: "[t]he information on this form, and the information we collect during an investigation may be disclosed without your consent as follows…to any source or potential source from which information is requested in the course of an investigation concerning the hiring or retention of an employee or other personnel action." See discussion related to plaintiff's previous e-Qip application at Ashbourne, No. 12-CV-01153 (BAH), 2015 WL 11303198, at 10.

> An action to enforce any liability created under this section may be brought . . . within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought any time within two years after discovery by the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5); see Tijerina v. Walters, 821 F.2d 789, 794, 797-98 (D.C. Cir. 1987).

Plaintiff filed her action on April 24, 2017.  Thus, any claim that accrued before April 24, 2015 is time-barred.

### 2.  Plaintiff's Claim For Violation Of Constitutional Rights Must Be Dismissed

#### a.  Plaintiff Had No Liberty or Property Interest in Employment as a Matter of Law

##### i.  Liberty Interest

This District has recognized "that a loss of *government* employment accompanied by a public employer's stigmatizing remarks constitutes a deprivation of a liberty interest." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 315 (4th Cir. 2012) (emphasis added); see Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 309 (4th Cir.2006).  Contractors do not have the requisite relationship with the Government to entitle them to a liberty or property interest in employment.[13]  Moreover, as noted above, "injury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause]." *Siegert v. Gilley,* 500 U.S. at 233.  Plaintiff must demonstrate that her reputational injury was accompanied by a state action that "distinctly

---

[13]  In Shirvinski, another contractor at the Coast Guard was determined to be "neither an employee of nor in a direct contractual relationship with the Coast Guard. Nor, as he concedes, did the Coast Guard 'formally bar' him 'from government contracting'" Shirvinski, 673 F.3d at 315.

altered or extinguished" her legal status if she wants to succeed. Shirvinski, 673 F.3d at 315; see also Paul v. Davis, 424 U.S. 693, 711 (1976).

Plaintiff notes in her Complaint that she was employed not by the Coast Guard, but by a contractor.  Complaint, ¶ 32.  Therefore, Plaintiff had no employment relationship with the Government necessary to find a liberty interest.   Moreover, Plaintiff has not alleged she was denied employment in any form as a result of any potential unlawful action by the Defendants. Even if plaintiff produced any facts alleging she was denied work, Plaintiff would have to assert more than simply being denied a particular position.  Unless Plaintiff proffers facts showing a colorable argument that DHS's actions "distinctly altered or extinguished" her employment ability, her liberty interest claim must fail as a matter of law. Shirvinski, 673 F.3d at 315.

### ii.  Property Interest

Plaintiff also lacks a claim for violation of her property interests.  First, it is not clear what property right is being infringed.  For instance, in her Complaint Introduction, Plaintiff refers to property interests in her business, "Ashbourne & Company" (Complaint, Introduction). But Plaintiff makes no allegation that any defendant has removed her right to control the assets of her or her corporation.  In Count 2 of the Complaint, there is simply no further mention of property interests of any sort.  Complaint, ¶¶ 37-40.  For this reason, Plaintiff has failed to plead any facts to support a claim for a violation of a property interest and the claim must fail.

In any event, because property interests are created and defined by state law, the existence of a property interest depends on plaintiff's claim of entitlement under District of Columbia law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Hall v. Ford, 856 F.2d 255, 265 (D.C. Cir. 1988).  In the employment context, the operative question is whether the plaintiff has a "legitimate expectation ... that he would continue in his job." Hall v.

Ford, 856 F.2d at 265. Evans v. District of Columbia, 391 F. Supp. 2d 160, 165 (D.D.C. 2005). At-will employees (as opposed to those terminable only for cause) have no property interest in their employment "because there is no objective basis for believing that they will continue to be employed indefinitely." Evans, 391 F. Supp. 2d at 165.

Again, in the Introduction section of her Complaint, Plaintiff states that she brings this suit for infringement of her 5th amendment liberty interests and her 5th and 14th amendment property interests in her business, Ashbourne & Company (Complaint, Introduction), but no further discussion is made connecting Ashbourne & Company to any action by the defendant. Instead, in Count 2 of the Complaint, Plaintiff appears to reassert that defendants Thomas Harker and James Trommater "falsified" her records in an unspecified manner and then goes on to apparently provide a definition of self-employment (Complaint, ¶¶ 37-40). Such bare "labeling and conclusions" which is "devoid of factual enhancement" offers nothing for the defendant to defend itself against, and as such must be dismissed for failure to state a claim. Iqbal, 556 U.S. at 678. Because Plaintiff had no "expectation of continued employment" with an agency she was not employed with in the first place, her property interest claim must also fail. See Evans, 391 F. Supp. 2d at 165.

b.  Plaintiff would be Barred Asserting any Claim to a Security
Clearance, as Such  Determinations Are Non-Justiciable

It does not appear that Plaintiff is seeking to challenge a loss of a security clearance, but to the extent that this may be within the relief to which she claims an entitlement, she would be unable to secure such relief. Such claims would fail because Plaintiff would be seeking to litigate the merits of her security clearance denial, an issue which is not reviewable under Dep't of Navy v. Egan, 484 U.S. 518, 528 (1988). To the extent that Plaintiff is pursuing this lawsuit in an effort to challenge her security clearance denial, the underlying substance of that decision

-30-

is, thus, not subject to review.  And Plaintiff has not alleged that the Coast Guard failed to follow its procedures with regard to making a security clearance determination and she failed to take advantage of the procedures available to her to inform the Coast Guard of why its decision was incorrect.

Absent a specific mandate from Congress providing otherwise, federal courts lack subject-matter jurisdiction to review an agency's security clearance decision.  Hegab v. Long, 716 F.3d 790 (4th Cir. 2013);[14]  see Dep't of Navy v. Egan, 484 U.S. at 528.   Even where courts have reviewed a claim that plaintiff's constitutional rights were violated, the courts have held that any claim that requires reviewing the merits of the security clearance decision fails to state a claim. El–Ganayni v. U.S. Dep't of Energy, 591 F.3d 176, 183–85 (3d Cir. 2010) (noting that while courts may have jurisdiction over the review of security clearance claims, such claims other than constitutional claims fail to state a claim); Dorfmont v. Brown, 913 F.2d 1399, 1401-04 (9th Cir. 1990) (holding that courts lack jurisdiction to review the merits of security clearance determinations, except possibly in the limited case where an individual has a colorable constitutional claim); Hill v. Dep't of Air Force, 844 F.2d 1407, 1411 (10th Cir. 1988) (suggesting that Egan would be "hardly worth the effort" if it could be "bypassed simply by invoking alleged constitutional rights").

The logic in these cases is that no one has a "right" to a security clearance and the grant of a clearance requires an affirmative act of discretion on the part of the granting official; clearance may be granted only when clearly consistent with the interest of national security. Egan, 484 U.S. at 528.  A clearance denial does not equate with passing judgment upon an

---

[14] In *Hebab*, the Fourth Circuit Court of Appeals also dealt with a situation where plaintiff was "recharacterizing" a challenge to the merits of a security clearance as a constitutional claim.

individual's character.  <u>Id.</u>  "[T]o be denied [clearance] on unspecified grounds in no way implies

disloyalty or any other repugnant characteristic." <u>Molerio</u> v. <u>FBI</u>, 749 F.2d 815, 824 (1984).  As

such, the denial of a security clearance is unlikely to bar or otherwise fully exclude plaintiff from

further employment in her field.

Plaintiff's constitutional claims are merely a re-characterization of a challenge against

what would be the merits of a security clearance denial.  If such an interpretation is inferred from

the Complaint itself, it wouold be a challenge to the merits of the security clearance decision.

This is simply not allowed under <u>Egan</u>.  As a result, Plaintiff cannot state a claim against the

merits of the security clearance determination couched as a constitutional violation.  <u>See</u> <u>El–</u>

<u>Ganayni</u>, 591 F.3d at 183–85, and <u>Dorfmont,</u> 913 F.2d at 1401-04.

## V.  <u>CONCLUSION</u>

For the foregoing reasons Federal Defendants respectfully request that the Court grant

their motion and dismiss this action.

Respectfully submitted,

CHANNING D. PHILLIPS, DC Bar #415793
United States Attorney


DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division


By:_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Motion to Dismiss, supporting memorandum, exhibits  and a

proposed order have been served by mailing and emailing copies thereof to:


ANICA ASHBOURNE
7422 Drumlea Road
Capitol Heights, MD  20743

on this 30th day of August, 2017.


_____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street,  N.W.
Civil Division
Washington, DC 20530
(202) 252-2536

<u>Table of Contents</u>

I.  <u>INTRODUCTION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  <u>PLAINTIFF'S PRIOR LITIGATION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  <u>Civil Action No. 12-1153 BAH</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  <u>Civil Action No. 16-908</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

III.  <u>GENERAL LEGAL STANDARDS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  <u>ARGUMENT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.  <u>The Individual Capacity Claims</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

        1.  <u>Lack of Proper Service and Personal Jurisdiction</u> . . . . . . . . . . . . . . . . . . .10

        2.  <u>Res Judicata/collateral estoppel</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

        3.  <u>Individual Privacy Act Claims Do Not Exist</u> . . . . . . . . . . . . . . . . . . . . . . 13

        4.  <u>Failure To State A Claim and Qualified Immunity</u> . . . . . . . . . . . . . . . . . 14

        5.  <u>Special Factors Counsel Hesitation in The Creation Of A Bivens Remedy</u>.18

        6.  <u>Statute of Limitations</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    B.  <u>The Official Capacity Claims</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

        1.  <u>The Privacy Act</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            a.  The Plaintiff Cannot Satisfy the Elements of <u>Subsection (g)(1)(C) As a Matter of Law</u> . . . . . . . . . . . . . . . . . . . . . . .21

            b.  The Plaintiff's Claim for Improper Release of <u>Protected Information Must Fail as a Matter of Law</u> . . . . . . . . . . . . . 24

            c. <u>The Privacy Act's Statute of Limitations</u> . . . . . . . . . . . . . . . . . . . . .27

        2.  <u>Plaintiff's Claim For Violation Of Constitutional Rights Must Be Dismissed</u> . . 28

            a.  Plaintiff Had No Liberty or Property Interest <u>in Employment as a Matter of Law</u> . . . . . . . . . . . . . . . . . . . . . . . . . 28

        i.  <u>Liberty Interest</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        ii.  <u>Property Interest</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

     b.  Plaintiff would be Barred Asserting any Claim to a Security
     <u>Clearance, as Such  Determinations Are Non-Justiciable</u> . . . . . . . 30

V.  <u>CONCLUSION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Table of Authorities

Cases

Al-Owhali v. Ashcroft,
   279 F. Supp. 2d 13 (D.D.C. 2003) ............................................................................ 7
Alford,
   60 F.Supp.3d ............................................................................................................ 6
Allen v. McCurry,
   449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) .............................................. 12
American Fire & Casualty Co. v. Finn,
   341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951) ....................................................... 8
Anderson v. Creighton,
   483 U.S. 635 (1987) .......................................................................................... 14, 16
Ashbourne v. Hansberry,
   Civil Action No. 12-1153 BAH, 2015 WL 11303198 (D.D.C. Nov. 24, 2015) ............... passim
Ashbourne v. Hansberry,
   No. CV 16-908 (CKK), 2017 WL 1183936 (D.D.C. Mar. 29, 2017) .................................. 7, 12
Ashcroft v. Iqbal,
   556 U.S. 662 (2009) .......................................................................................... passim
Banks v. Chesapeake and Potomac Telephone Co.,
   802 F.2d 1416 ........................................................................................................ 20
Belhas v. Ya'alon,
   515 F.3d 1279 (D.C. Cir. 2008) ............................................................................... 9
Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ................................................................................. 8, 9, 13, 21
Bender v. Williamsport Area School Dist.,
   475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ............................................. 8
Bivens v. Six Unknown Named Agents,
   403 U.S. 388 (1971) ................................................................................................. 1
Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,
   402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ............................................ 12
Brown v. GSA,
   425 U.S. 820 (1976) ............................................................................................... 19
Brown v. United States,
   752 F.2d  (D.C. Cir. 1983) ...................................................................................... 20
Bush v. Lucas,
   462 U.S. 367 (1983) ............................................................................................... 19
Chambers v. U.S. Dep't of Interior,
   568 F.3d 998 (D.C. Cir. 2009) ............................................................................... 24
Chen v. District of Columbia,
   256 F.R.D. 263 (D.D.C. 2009) ......................................................................... 10, 11
Clayton v. District of Columbia,
   931 F.Supp.2d 192 (D.D.C. 2013) ........................................................................... 8

Cleavinger v. Saxner,
    474 U.S. 193 (1985)................................................................................................ 14
Cleveland Bd. of Educ. v. Loudermill,
    470 U.S. 532 (1985)................................................................................................ 29
Coal. for Underground Expansion v. Mineta,
    333 F.3d 193 (D.C. Cir. 2003)................................................................................ 9
Coleman v. Potomac Elec. Power Co.,
    310 F.Supp.2d 154 (D.D.C. 2004)......................................................................... 5
Comm'r of Internal Revenue v. Sunnen,
    333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948)................................................ 12
Crawford-El v. Britton,
    523 U.S. 574 (1998)................................................................................................ 15
Davis v. Billington,
    681 F.3d 377 (D.C. Cir. 2012)................................................................................ 18
Davis v. Dallas Area Rapid Transit,
    383 F.3d 309 (5th Cir. 2004) ................................................................................. 6
Davis v. Scherer,
    468 U.S. 183 (1984)........................................................................................... 15, 16
Dearsman v. Kurtz,
    516 F. Supp. 1255 (D.D.C. 1981)........................................................................... 19
Delgado v. Bureau of Prisons,
    727 F. Supp. 24 (D.D.C. 1989) .............................................................................. 10
Dep't of Navy v. Egan,
    484 U.S. 518 (1988)................................................................................... 1, 30, 31, 32
Deters v. U.S. Parole Comm'n,
    85 F.3d 655 (D.C.Cir.1996)................................................................................... 22
Doe v. Cheney,
    885 F.2d 898 (D.C. Cir. 1989)................................................................................ 18
Doe v. U.S. Dept. of Justice,
    660 F.Supp.2d 31 (D.D.C. 2009)....................................................................... 22, 25
Doe v. United States Department of Justice,
    753 F.2d 1092 (D.C. Cir. 1985).............................................................................. 20
Dominguez v. District of Columbia,
    536 F.Supp.2d 18 (D.D.C. 2008)........................................................................... 11
Dong v. Smithsonian Inst.,
    125 F.3d 877 (D.C. Cir. 1997)................................................................................ 13
Dorfmont v. Brown,
    913 F.2d 1399 (9th Cir. 1990) ........................................................................... 31, 32
Drake v. FAA,
    291 F.3d 59 (D.C. Cir. 2002).................................................................................. 12
Dupree v. Jefferson,
    666 F.2d 606 (D.C. Cir. 1981) ............................................................................... 2
Earle v. Holder,
    815 F. Supp. 2d 176 (D.D.C. 2011)........................................................................ 13
EEOC v. St. Francis Xavier Parochial Sch.,
    117 F.3d 621 (D.C. Cir. 1997)................................................................................ 10

El–Ganayni v. U.S. Dep't of Energy,
   591 F.3d 176 (3d Cir. 2010)............................................................................ 31, 32
Erby v. United States,
   424 F. Supp. 2d 180 (D.D.C. 2006) ......................................................................... 8
Evans v. District of Columbia,
   391 F. Supp. 2d 160 (D.D.C. 2005) ....................................................................... 30
Farmer v. Moritsugu,
   163 F.3d 610 (D.C. Cir. 1998) .............................................................................. 15
Fattahi v. Bureau of Alcohol, Tobacco & Firearms,
   186 F. Supp. 2d 656 (E.D. Va. 2002) .................................................................... 25
FDIC v. Meyer,
   510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)............................................ 8
Fernandors v. District of Columbia,
   382 F. Supp. 2d 63 (D.D.C. 2005)......................................................................... 15
GasPlus, L.L.C. v. U.S. Dep't of Interior,
   466 F. Supp. 2d 43 (D.D.C. 2006)......................................................................... 19
Gleason v. Malcomb,
   718 F.2d 1044 (11th Cir. 1983) ............................................................................ 19
Gresham v. D.C.,
   66 F.Supp.3d 178 (D.D.C. 2014) ............................................................................ 6
Griffith v. Nixon,
   518 F.2d 1195 ....................................................................................................... 11
Gustave-Schmidt v. Chao,
   226 F. Supp. 2d 191 (D.D.C. 2002) ....................................................................... 10
Hall v. Ford,
   856 F.2d 255 (D.C. Cir. 1988) .............................................................................. 29
Hammond v. Federal Bureau of Prisons,
   740 F.Supp.2d 105 (D.D.C. 2010)......................................................................... 11
Hannon v. Turnage,
   892 F.2d 653 (7th Cir. 1990) ................................................................................ 16
Harlow v. Fitzgerald,
   457 U.S. 800 (1982)...................................................................................... 14, 15, 16
Harris v. United States,
   422 F.3d 322 (6th Cir. 2005) ................................................................................ 20
Hegab v. Long,
   716 F.3d 790 (4th Cir. 2013) ................................................................................ 31
Herbert v. Nat'l Acad. of Scis.,
   974 F.2d 192 (D.C. Cir. 1992) ................................................................................ 9
Herrion v. Children's Hosp. Nat'l Med. Ctr.,
   786 F.Supp.2d 359 (D.D.C. 2011) ......................................................................... 12
Hill v. Dep't of Air Force,
   844 F.2d 1407 (10th Cir.1988) ......................................................................... 27, 31
Hubbard v. Adm'r, EPA,
   982 F.2d 531 (D.C. Cir. 1992) ................................................................................ 8
I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,
   723 F.2d 944 (D.C. Cir. 1983) .............................................................................. 12

Int'l Union v. Clark,
   No. 02–1484, 2006 WL 2598046 n. 19 ................................................................................ 12
*Jang v. United Techs. Corp.*,
   206 F.3d 1147 (11th Cir. 2000) ........................................................................................... 6
Jankovic v. Int'l Crisis Group,
   494 F.3d 1080 (D.C. Cir. 2007) ...................................................................................... 2, 4
Jerome Stevens Pharmacy, Inc. v. FDA,
   402 F.3d 1249 (D.C. Cir. 2005) ...................................................................................... 8, 9
Johnson v. Veterans Affairs Med. Ctr.,
   133 F. Supp. 3d 10 (D.D.C. 2015) ....................................................................................... 8
Johnston v. Horne,
   875 F.2d 1415 (9th Cir. 1989) .......................................................................................... 21
Jones v. Executive Office of President,
   167 F.Supp.2d 10 (D.D.C. 2001) ...................................................................................... 13
Kokkonen v. Guardian Life Ins. Co. of America,
   511 U.S. 375 (1994) ............................................................................................................ 8
Lawrence v. Acree,
   79 F.R.D. 669 (D.D.C. 1978) ........................................................................................... 10
Leichtman v. Koons,
   527 A.2d 745 ...................................................................................................................... 11
Liff v. Office of the Inspector Gen. for the U.S. Dep't of Labor,
   156 F. Supp. 3d 1 (D.D.C. 2016) ...................................................................................... 17
Lynn v. Lappin,
   593 F. Supp. 2d 104 (D.D.C. 2009) .................................................................................. 13
Malley v. Briggs,
   475 U.S. 335 (1986) .......................................................................................................... 16
Martinez v. Bureau of Prisons,
   444 F.3d 620 (D.C. Cir. 2006) .......................................................................................... 13
McClam v. Barry,
   697 F.2d 366 (D.C. Cir. 1983) .......................................................................................... 20
McNutt v. General Motors Acceptance Corp.,
   298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) .............................................................. 8
Mitchell v. Forsyth,
   472 U.S. 511 (1985) .......................................................................................................... 14
Mittleman v. U.S. Treasury,
   773 F. Supp. 442 (D.D.C. 1991) ...................................................................................... 18
Molerio v. FBI,
   749 F.2d 815 (1984) .......................................................................................................... 32
Moore v. Agency for International Development,
   994 F.2d 874 (D.C. Cir. 1993) .......................................................................................... 11
Nat'l Aeronautics & Space Admin. v. Nelson,
   562 U.S. 134 (2011) ..................................................................................................... 25, 26
Navy, Marshall & Gordon v. U.S. International Development-Corporation Agency,
   557 F. Supp. 484 (D.D.C. 1983) ...................................................................................... 10
Neal v. Kelly,
   963 F.2d 453 (D.C. Cir. 1992) ............................................................................................ 7

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ................................................................ 6
Paige v. DEA,
  665 F.3d 1355 (D.C. Cir. 2012) ........................................................... 22
Palmieri v. United States,
  72 F. Supp. 3d ..................................................................................... 27
Paul v. Davis,
  424 U.S. 693 (1976) ............................................................................ 29
Pearson v. Callahan,
  555 U.S. 223 (2009) ............................................................................ 17
Peters v. District of Columbia,
  873 F. Supp. 2d 158 (D.D.C. 2012) .................................................... 12
Pleasant v. Lovell,
  876 F.2d 787 (10th Cir. 1989) ............................................................ 16
Porter v. Shah,
  606 F.3d 809 (D.C. Cir. 2010) ............................................................ 12
Reuber v. United States,
  750 F.2d 1039 (D.C. Cir. 1984) .......................................................... 11
Ridpath v. Bd. of Governors Marshall Univ.,
  447 F.3d 292 (4th Cir.2006) ............................................................... 28
Salas v. Carpenter,
  980 F.2d 299 (5th Cir. 1992) .............................................................. 16
Saucier v. Katz,
  533 U.S. 194 (2001) ................................................................ 14, 15, 17
Schweiker v. Chilicky,
  487 U.S. 412 (1988) ............................................................................ 19
Settles v. U.S. Parole Comm'n,
  429 F.3d 1098 (D.C. Cir. 2005) ............................................................ 9
Sheppard v. District of Columbia,
  791 F.Supp.2d 1 (D.D.C. 2011) .......................................................... 12
Shirvinski v. U.S. Coast Guard,
  673 F.3d 308 (4th Cir. 2012) ......................................................... 28, 29
Siegert v. Gilley,
  500 U.S. 226 (1991) ............................................................. 15, 18, 28
Simpkins v. District of Columbia Government,
  108 F.3d 366 (D.C. Cir. 1997) ....................................................... 10, 12
Smalls v. United States,
  471 F.3d 186 (D.C. Cir. 2006) ............................................................ 12
Spagnola v. Mathis,
  859 F.2d 223 (D.C. Cir. 1988) ............................................................ 19
Stewart v. Baldwin County Bd. of Educ.,
  908 F.2d 1499 (11th Cir. 1990) .......................................................... 16
Thompson v. Dep't of State,
  400 F. Supp. 2d 1 (D.D.C.2005) ......................................................... 22
Tijerina v. Walters,
  821 F.2d 789 (D.C. Cir. 1987) ............................................................ 28

<u>Transohio Sav. Bank</u> v. <u>Dir., OTS</u>,
  967 F.2d 598 (D.C. Cir. 1992) ........................................................ 20
<u>Trudeau</u> v. <u>FTC</u>,
  456 F.3d 178 (D.C. Cir. 2006) ......................................................... 9
<u>Turner</u> v. <u>Bank of North America</u>,
  4 U.S. (4 Dall.) 8, 1 L.Ed. 718 (1799) ............................................ 8
<u>United States</u> v. <u>Mitchell</u>,
  445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) .................... 8
<u>United States</u> v. <u>Stanley</u>,
  483 U.S. 669 (1987) ....................................................................... 19
<u>Washington</u> v. <u>Newsom</u>,
  977 F.2d 991 (6th Cir. 1992) ........................................................ 16
<u>Weiss</u> v. <u>Int'l Bhd. of Elec. Workers</u>,
  729 F. Supp. 144 (D.D.C. 1990) ................................................... 19
<u>Williams</u> v. <u>GEICO Corp.</u>,
  792 F.Supp.2d 58 (D.D.C. 2011) ................................................... 10
<u>Willy</u> v. <u>Coastal Corp.</u>,
  503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) .................. 8
<u>Wilson</u> v. <u>Garcia</u>,
  471 U.S. 261 (1985) ....................................................................... 20
<u>Wilson</u> v. <u>Layne</u>,
  526 U.S. 603 (1999) ....................................................................... 15
<u>Wilson</u> v. <u>Libby</u>,
  535 F.3d 697 (D.C. Cir. 2008) ....................................................... 18
<u>Ziglar</u> v. <u>Abbasi</u>,
  137 S.Ct. 1843, 2017 WL 2621317 (June 19, 2017) ...................... 18

Statutes

28 U.S.C. § 517 .................................................................................... 1
5 U.S.C. § 522a(b)(3) .......................................................................... 25
5 U.S.C. § 552(f) ................................................................................ 13
5 U.S.C. § 552a(a)(1) .......................................................................... 13
5 U.S.C. § 552a(e)(5) .......................................................................... 21
5 U.S.C. § 552a(g) ......................................................................... 21, 22
5 U.S.C. § 552a(g)(4) .......................................................................... 21
5 U.S.C. §§ 552a(g)(1)(C) ..................................................................... 4
5 U.S.C.A. § 552a(b) .......................................................................... 25
D.C. Code § 12-301(4) .................................................................. 14, 20
U.S.C.A. § 552a ................................................................................. 25

Rules

Fed. R. Civ. P. 11(b) ........................................................................... 13
Fed. R. Civ. P. 12 ................................................................................. 1
Fed. R. Civ. P. 12(b) ......................................................................... 1, 7
Fed. R. Civ. P. 12(b)(2) ....................................................................... 12

Fed. R. Civ. P. 12(b)(5).............................................................................................. 11
Fed. R. Civ. P. 25(d) ................................................................................................... 1
Fed. R. Civ. P. 4(i)(4) ............................................................................................... 11
Fed. R. Civ. P. 56(e) ................................................................................................... 7
Fed. R. Evid. 201 ........................................................................................................ 2
Federal Rule of Civil Procedure 8 ........................................................................... 21
Federal Rules of Civil Procedure 12(b)(1)...................................................... 1, 7, 10
Rule 12(b)(6)........................................................................................................ 8, 21