## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANICA ASHBOURNE,

      *Plaintiff*,

    v.

DONNA HANSBERRY, *et al.*,

      *Defendants.*

Civil Action No. 17-752 (LLA)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Anica Ashbourne, an attorney proceeding pro se, alleges that the Secretary of the U.S. Department of Homeland Security ("DHS") and DHS employees James Trommatter and Thomas Harker (collectively, the "DHS Defendants") violated the Privacy Act and the Fifth Amendment when they found her "unsuitable" for employment with the U.S. Coast Guard. *See* ECF No. 1; ECF No. 30-1 at 2. The DHS Defendants now move for summary judgment. ECF No. 30. For the reasons explained below, the court will grant Defendants' motion.

### I.      Factual Background

Ms. Ashbourne, a Black woman, worked as a Senior Associate for the Coast Guard beginning in November 2014. ECF No. 53-2 ¶¶ 1-2. She was employed by Immersion Consulting, a contractor. *Id.* ¶ 2. In July 2014, Ms. Ashbourne completed an Optional Form 306, "Declaration for Federal Employment" ("OF-306"). *Id.* ¶ 3; ECF No. 30-5 at 214-15 (Def. Ex. 3). She answered "yes" to Question 12, which asked, "During the last 5 years, have you been fired from any job for any reason, did you quit after being told you would be fired, did you leave any job by mutual agreement because of specific problems, or were you debarred from Federal employment by the Office of Personnel Management or any other Federal agency?" ECF No. 53-2 ¶ 3; ECF

No. 30-5 at 214 (Def. Ex. 3).  She also answered "yes" to Question 13: "Are you delinquent on any Federal debt?"  ECF No. 53-2 ¶ 4; ECF No. 30-5 at 214 (Def. Ex. 3).  Ms. Ashbourne signed the OF-306, certifying that the information she had provided was true.  ECF No. 30-5 at 215 (Def. Ex. 3).

In August 2014, Personnel Security Specialist Noelle Beato emailed Ms. Ashbourne with several follow-up questions, including: "Need reason for leaving employment with the US Department of Treasury and IRS for question #12" and "Need length and amount for the federal [i]ncome tax delinquency and the FHA home mortgage delinquency listed for question #13." *Id.* at 217-18; *see* ECF No. 53-2 ¶ 6.  Ms. Ashbourne responded, stating that she had left Treasury because her employer "falsely accused her of lying on her résumé and about a previous employment."  ECF No. 53-2 ¶ 6; *see* ECF No. 30-5 at 217 (Def. Ex. 3).  As to her federal income tax delinquency, she explained: "Since my 2012-2013 employer did not issue me a W2, I am working with IRS to determine the true amount owed.  I am guessing that it will probably be around $6000."  ECF No. 30-5 at 217 (Def. Ex. 3).  Ms. Ashbourne also stated that she was "about $13000" delinquent on her home mortgage, secured through the Federal Housing Administration ("FHA"), and that she was working with her bank to modify the loan.  *Id.*  Ms. Beato requested additional follow-up information about the dates on which Ms. Ashbourne's loans became delinquent, which Ms. Ashbourne provided.  *See* ECF No. 53-1 (Pl. Ex. A-1).

In December 2014, Ms. Ashbourne signed another OF-306 and again answered "yes" to Questions 12 and 13.  ECF No. 53-2 ¶ 8; ECF No. 30-3 at 1 (Def. Ex. 1).  In the space provided to elaborate on her answers, Ms. Ashbourne "explained she was litigating her unlawful termination . . . in U.S. district court, and that she was working with the IRS and her mortgage company to resolve these debts."  ECF No. 53-2 ¶ 8; ECF No. 30-3 at 2 (Def. Ex. 1).

On April 22, 2015, the Coast Guard issued Ms. Ashbourne a letter (the "SECCEN Letter") stating that the information she had provided in her OF-306s and the results of her background investigation "raise[d] a serious question of [her] current suitability for employment."   ECF No. 30-4 at 1 (Def. Ex. 2); ECF No. 53-2 ¶ 9.   Attached to the letter was a "Summary of Charges and Supporting Information," which included "the specific charges and a summary of the investigative information, which . . . could be a basis for [the Coast Guard] finding [Ms. Ashbourne] unsuitable." ECF No. 30-4 at 1 (Def. Ex. 2); ECF No. 53-2 ¶ 10.   That document detailed two charges: "Employment Misconduct or Negligence" and "Dishonest Conduct (Financial)." ECF No. 30-4 at 3-4 (Def. Ex. 2).   As to each charge, the document explained that Ms. Ashbourne had answered "yes" to Questions 12 and 13 on her July and December OF-306s and summarized the explanations she had provided.   *See id.*   The SECCEN letter also explained that, pursuant to federal regulations, the Coast Guard considered "[t]he nature of the position," "[t]he nature and seriousness of the conduct," and "[t]he recency of the conduct" in making these charges.  *Id.* at 1.

The SECCEN letter informed Ms. Ashbourne that she had the "opportunity to answer and make any comments or explanation [she] wish[ed] in the space provided after each charge" within thirty days, that she could provide documentary evidence, and that she could request a copy of the material the Agency relied upon in preparing the Summary of Charges.  *Id.* at 1-2.  If she did not reply within thirty days, the Agency would "ma[ke] a decision based on the information on hand." *Id.* at 2.  Ms. Ashbourne did not respond to the charges.  ECF No. 53-2 ¶ 13.

The parties agree that Ms. Ashbourne received a copy of the SECCEN letter and accompanying charges on April 22, 2015, and that "security officers escorted her off the premises" that same day.  ECF No. 53-2 ¶ 20.  However, the parties disagree about other details of that day.

Ms. Ashbourne alleges that Mr. Harker called her into a small conference room where "she was immediately surrounded by several armed male guards, who had their hands on their guns and billy clubs," and that she "was traumatized into believing that she would be clubbed, tackled, or shot in the back." *Id.* Mr. Harker handed Ms. Ashbourne a copy of the charges, "telling her armed guards were there to remove her from the facility" because "they had found financial dishonesty and employment misconduct during her background investigation." *Id.* He then "instructed the armed guards to escort [Ms. Ashbourne]—in front of her off-site employer, co-workers, potential employers, and other employees—out of the facility." *Id.* The DHS Defendants counter that Ms. Ashbourne has proffered no evidence to support these claims, that "the Coast Guard utilized its standard procedures to escort Plaintiff from the workplace, and [that] no witnesses corroborated Plaintiff's claim that her escorts acted in any threatening manner." ECF No. 30-1 at 17. Immersion Consulting ultimately terminated Ms. Ashbourne because of the Agency's unsuitability determination. *See* ECF No. 30-5 at 77 (Def Ex. 3).

## II.    Procedural History

On July 19, 2015, Ms. Ashbourne filed an Equal Employment Opportunity Commission ("EEOC") complaint against the Coast Guard, alleging that the Agency had discriminated against her on the basis of race and sex when they issued the SECCEN letter. ECF No. 30-5 at 22-24 (Def. Ex. 3). An Administrative Judge found for the Agency, determining that Ms. Ashbourne "ha[d] not introduced any evidence demonstrating how the Agency was motivated by either her race or gender," ECF No. 30-6 at 5 (Def. Ex. 4), and the Commission affirmed, ECF No. 30-8 at 9 (Def. Ex. 6).

Ms. Ashbourne filed this suit on April 24, 2017 against the U.S. Treasury Department ("Treasury") Secretary in his official capacity; three Treasury employees—Donna Hansberry,

Donna Prestia, and Thomas Collins—in their official and individual capacities; the DHS Secretary in his official capacity; and DHS employees James Trommatter and Thomas Harker in their official and individual capacities.[1]  ECF No. 1; ECF No. 19 at 1.  Ms. Ashbourne alleged violations of the Privacy Act, 5 U.S.C. § 552a, *et seq.*, and Fifth Amendment due process.  ECF No. 1.  Defendants moved to dismiss.  ECF No. 8.  The court (Sullivan, J.) dismissed Ms. Ashbourne's claims against the Treasury defendants in their individual and official capacities, as well as her claims against the DHS employees in their individual capacities.  ECF No. 19 at 2-10, 23.  The only remaining claims before this court are Ms. Ashbourne's Privacy Act and due process claims brought against the DHS defendants in their official capacities.  *See id.* at 10-20, 23; ECF No. 30-1 at 2.

The DHS Defendants have moved for summary judgment, arguing that Ms. Ashbourne's Privacy Act claims are time-barred and fail on the merits; that Ms. Ashbourne was afforded appropriate due process; and that all of her claims are barred by collateral estoppel.  ECF No. 30-1. Ms. Ashbourne opposed, ECF No. 38, but her counter-statement of disputed facts did not conform to the court's standing order, ECF No. 5 ¶ 13, because she had not "indicated in the right hand column of the Defendants' Statement of Material Facts Not in Dispute whether each fact is

---

[1] Ms. Ashbourne has filed three other suits in this court arising from related incidents: Nos. 12-CV-1153, 16-CV-908, and 21-CV-1313.  In No. 12-CV-1153, she sued the Treasury Department under the Privacy Act, challenging the Agency's determination that she provided misleading information during her background investigation and her subsequent termination. *Ashbourne v. Hansberry*, No. 12-CV-1153, 2015 WL 11303198 (D.D.C. Nov. 24, 2015), *aff'd*, 703 F. App'x 3 (D.C. Cir. 2017).  The court (Howell, J.) granted summary judgment to the Agency. *See id.*  Ms. Ashbourne again sued the Treasury Department in No. 16-CV-908, arguing that the Agency's background check determination and decision to terminate her violated Title VII. *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99 (D.D.C. 2017), *aff'd*, 894 F.3d 298 (D.C. Cir. 2018). The court (Kollar-Kotelly, J.) concluded that the suit was barred by res judicata and dismissed the case. *See id.*  And in No. 21-CV-1313, Ms. Ashbourne sues the Treasury Department and the Department of Homeland Security, alleging violations of 42 U.S.C. §§ 1985-86, the Civil Rights Act of 1866, the Fifth and Thirteenth Amendments, and Title VII of the Civil Rights Act of 1964. That case remains pending before this court.

disputed or undisputed," Dec. 3, 2021 Minute Order.  The court ordered Ms. Ashbourne to file a corrected counter-statement of disputed facts by December 17, 2021.  Dec. 3, 2021 Minute Order. She did not do so.  The DHS Defendants then filed their reply, arguing in part that Ms. Ashbourne had conceded all facts asserted by Defendants by failing to rebut them.  ECF No. 44.

On February 22, 2022, Ms. Ashbourne filed a motion for leave to file her counter-statement of disputed facts out of time, explaining that she had not received electronic notification of the December 3, 2021 minute order.  ECF No. 45.  The court denied the motion without prejudice because she had not met and conferred with Defendants before filing as required by Local Civil Rule 7(m).  *See* Feb. 24, 2022 Minute Order.

One year later, Ms. Ashbourne again sought leave to file her counter-statement of disputed facts out of time.  ECF No. 49.  In her motion, she argued that she had made a good-faith but unsuccessful effort to meet and confer with Defendants.  *Id.*  The DHS Defendants opposed, ECF No. 50, and Plaintiff replied, ECF No. 51.

When a defendant seeks summary judgment against a pro se plaintiff, the court typically issues an order advising the plaintiff of the legal rules that govern oppositions to motions for summary judgment.  *See Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988); *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).  Because such an order was not issued in this case before Ms. Ashbourne filed her opposition, the court issued a *Fox-Neal* order on January 26, 2024.  ECF No. 52.  The court also provided Ms. Ashbourne the opportunity to file an amended opposition and the DHS Defendants the opportunity to file an amended reply in light of the *Fox-Neal* order.

*Id.* Both parties did so: Ms. Ashbourne filed her amended opposition on February 23, 2024, ECF No. 53, and the DHS Defendants filed their amended reply on April 11, 2024, ECF No. 55.[2]

### III.   Legal Standard

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see* Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the "absence of a genuine issue of material fact" in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, the appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Liberty Lobby*, 477 U.S. at 248)).

"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam), and "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 651 (quoting *Liberty Lobby*, 477 U.S. at 255 (alteration in original)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51

---

[2] In light of the amended briefing schedule, the court denied Ms. Ashbourne's motion for leave to file out of time, ECF No. 49, as moot, *see* ECF No. 52 at 1.

(2000) (quoting *Liberty Lobby*, 477 U.S. at 255); *see Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295-96 (D.C. Cir. 2015).

In addition, for a factual dispute to be "genuine," the non-moving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby*, 477 U.S. at 252, and cannot rely on "mere allegations" or conclusory statements, *see Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). Moreover, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In that situation, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* The court is only required to consider the materials explicitly cited by the parties but may on its own accord consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

The pleadings of pro se parties must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, "on a motion for summary judgment, a *pro se* plaintiff is held to the same evidentiary burdens as those represented by counsel and must therefore 'provide evidence that would permit a reasonable jury to find in h[er] favor.'" *Husain v. Power*, 630 F. Supp. 3d 188, 195 (D.D.C. 2022) (quoting *Prunte v. Univ'l Music Grp.*, 699 F. Supp. 2d 15, 21-22 (D.D.C. 2010), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011) (per curiam)).

## IV.   Discussion

The DHS Defendants argue that Ms. Ashbourne's claims fail for a number of reasons, *see* ECF No. 30; ECF No. 55, but the court need only address three. First, Ms. Ashbourne's Privacy

Act claim fails because she challenges the Agency's characterization of facts rather than the veracity of the underlying facts themselves.  *See* ECF No. 30-1 at 5; ECF No. 55 at 3-5.  Second, her Privacy Act claim fails because the Agency's disclosures were authorized routine uses.  *See* ECF No. 30-1 at 14-15; ECF No. 55 at 5-7.  And third, Ms. Ashbourne's due process claim fails because she was afforded appropriate due process.[3]  *See* ECF No. 30-1 at 16; ECF No. 55 at 8-10. The court addresses each argument in turn.

### A.   Privacy Act

The Privacy Act imposes "a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies," *FAA v. Cooper*, 566 U.S. 284, 287 (2012), and "provides for various sorts of civil relief to individuals aggrieved" by the government's failure to comply, *Doe v. Chao*, 540 U.S. 614, 618 (2004).  Relevant here, subsection 552a(g)(1)(C) provides a civil remedy where an agency fails to maintain accurate records about an individual "and consequently a determination is made which is adverse to the individual."  Subsection 552a(g)(1)(D) provides a remedy if the agency "fails to comply with any other provision of [the Privacy Act] . . . in such a way as to have an adverse effect on an individual," including by improperly disclosing records in violation of subsection 552a(b).  *See, e.g.*, *Ashbourne v. Hansberry*, No. 12-CV-1153, 2015 WL 11303198, at *9-10 (D.D.C. Nov. 24, 2015), *aff'd*, 703 F. App'x 3 (D.C. Cir. 2017).  The court concludes that Ms. Ashbourne cannot make out a Privacy Act claim under either subsection (g)(1)(C) or (g)(1)(D).  DHS Defendants are therefore entitled to summary judgment on this issue.

---

[3]  The court therefore need not address Defendants' remaining arguments: that Ms. Ashbourne's claims are barred by collateral estoppel, and that her Privacy Act claim is time-barred.

### 1.      Subsection 522a(g)(1)(C)

To recover damages under the Privacy Act, "a plaintiff must establish four elements: (1) [s]he has been aggrieved by an adverse determination; (2) the [Agency] failed to maintain h[er] records with the degree of accuracy necessary to assure fairness in the determination; (3) the [Agency's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [Agency] acted intentionally or willfully in failing to maintain accurate records." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009). "Central to a cause of action under subsection (g)(1)(C) is the existence of an adverse agency determination resulting from inaccurate agency records." *Id.*

"It is well-established that, 'generally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments.'" *Mueller v. Winter*, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (quoting *McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006)). An employee could not use the Privacy Act to challenge, for example, an unfavorable rating on a performance review, because that is "a classic statement of an author's subjective judgment about an individual's performance." *Id.* Even if the employee believes that judgment to be wrong, inaccurate conclusions based on accurate records do not fall within the purview of the Privacy Act. *See Doe v. U.S. Dep't of Just.*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009).

Ms. Ashbourne does not argue that the factual information in her OF-306s or the Agency's Summary of Charges is incorrect—she does not argue, for example, that she in fact answered "no" to Questions 12 and 13, or that she had no delinquent federal debts.[4] *See* ECF No. 53-2 ¶¶ 3-8.

---

[4] In this way, Ms. Ashbourne's case is different from *Doe v. United States*, 821 F.2d 694 (D.C. Cir. 1987), which she cites in her opposition. *See* ECF No. 53 at 1. Unlike Ms. Ashbourne, the plaintiff in *Doe* challenged the veracity of the facts the agency relied on in making its decision. *See* 821 F.2d at 695-96.

Rather, she alleges that the DHS Defendants violated the Privacy Act by making "unsubstantiated 'Financial Dishonesty' and 'Employment Misconduct' assertions" in its Summary of Charges. ECF No. 53 at 1. But those assertions are legal conclusions, not factual assertions. As the SECCEN letter explains, the Agency considered several factors in formulating these charges: the information Ms. Ashbourne herself provided, "[t]he nature of [Ms. Ashbourne's] position," "[t]he nature and seriousness of the conduct," and "[t]he recency of the conduct." ECF No. 30-4 at 1 (Def. Ex. 2). The Agency evaluated those factors and rendered a judgment: that Ms. Ashbourne had engaged in financial dishonesty and employment misconduct that "raise[d] a serious question of [her] current suitability for employment." *Id.* "[W]here a subjective evaluation is based on a multitude of factors, . . . and there are various ways of characterizing some of the underlying events, . . . it is proper [for an agency] to retain and rely on it." *Mueller*, 485 F.3d at 1198 (quoting *White v. Off. of Pers. Mgmt.*, 787 F.2d 660, 662 (D.C. Cir. 1986)).[5]

*Feldman v. CIA*, 797 F. Supp. 2d 29 (D.D.C. 2011), provides a helpful analogue. In *Feldman*, the plaintiff's federal employer launched an investigation into "purported improprieties

---

[5] Ms. Ashbourne also characterizes the key issue in this case as "whether the defendants violated the Privacy Act when they failed to verify the accuracy of their records against the factual records of independent and objective third parties." ECF No. 53 at 1. However, the records Ms. Ashbourne seems to have in mind are not her OF-306s, but rather the DHS Defendants' "assertions/charges" of misconduct. *See id.* at 1-2 ("James Trommatter, who authorized the Notice of Charges, did not verify the accuracy of his assertions/charges; instead, he characterized Plaintiff's OF-306 statements as the conduct . . . that would make her unsuitable for employment."); *id.* at 3 ("This Court should find . . . the defendants' unsubstantiated charges of Financial Dishonesty and Employment Misconduct, which are based on Plaintiff's OF-306 disclosures, is not evidence that Plaintiff engaged in Financial Dishonesty or in Employment Misconduct."). Because the charges represent the Agency's judgment or interpretation of the facts, the Privacy Act imposes no verification requirement. *See Blazy v. Tenet*, 979 F. Supp. 10, 21 (D.D.C. 1997), *aff'd*, No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1998) (explaining that because "derogatory statements were merely opinions of the interviewees and therefore unverifiable . . . [m]aintaining them in [plaintiff's] file therefore is not a violation of the Privacy Act.").

in his claims for reimbursement of travel expenses" and produced an unfavorable report.  797 F. Supp. 2d at 32.  Plaintiff challenged the report as an inaccurate record under the Privacy Act, arguing that it "was based on selective interpretation of confusing travel regulations that are known to be frequently misapplied and misunderstood."  *Id.* at 46-47.  In other words: the plaintiff disagreed with the report's "interpretation of legal issues—not . . . any factual errors."  *Id.* at 47.  Because "[t]he Privacy Act does not provide a cause of action for amending the judgment of federal officials," the court dismissed the claim.  *Id.*  As in *Feldman*, the Agency and Ms. Ashbourne have evaluated the same set of facts and arrived at different conclusions.  The Agency assessed the information Ms. Ashbourne provided about her prior employment and delinquent federal debts and concluded that she had engaged in misconduct.  Ms. Ashbourne disagrees.  Because Ms. Ashbourne challenges the Agency's legal conclusion or opinion, rather a factually inaccurate record, the Privacy Act offers no remedy.[6]  *See Mueller*, 485 F.3d at 1197; *Doe*, 660 F. Supp. 2d at 43.

## 2. Subsection 522a(g)(1)(D)

Ms. Ashbourne alleges that Mr. Harker violated the Privacy Act by disclosing her records to her employer (Immersion Consulting), her employer's representative on the contract (Gene Kim), and the security officers who escorted her from the building.  *See* ECF No. 53-4 ¶¶ 36, 50. The Privacy Act generally "prohibits a federal agency from 'disclos[ing] any record which is

---

[6] The court notes that, "[i]f a subjective judgment is 'based on a demonstrably false' factual premise . . . the Privacy Act compels the agency to correct or remove the judgment from the complaining individual's record."  *Mueller*, 485 F.3d at 1197 (quoting *White*, 787 F.2d at 662). To the extent Ms. Ashbourne is arguing that the Agency's charges were based on a demonstrably false factual premise, that argument cannot not succeed.  As discussed above, the parties agree on the underlying factual premise: that Ms. Ashbourne left jobs with former employers under the circumstances enumerated on her OF-306s and related documentation, and that Ms. Ashbourne was delinquent on her FHA mortgage and federal taxes.  *See* ECF No. 53-2 ¶¶ 3-8.  They disagree only on the Agency's interpretation or characterization of those facts as constituting misconduct.

contained in a system of records by any means of communication to any person.'" *Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (alteration in original) (quoting 5 U.S.C. § 552a(b)).  However, "an agency [can] make disclosures that constitute a 'routine use' of the record."  *Ames v. U.S. Dep't of Homeland Sec.*, 861 F.3d 238, 240 (D.C. Cir. 2017) (quoting 5 U.S.C. § 552a(b)(3)).  To constitute routine use, "an agency's disclosure of a record must be both (i) 'for a purpose which is compatible with the purpose for which it was collected' and (ii) within the scope of a routine use notice published by the agency."  *Id.* (quoting 5 U.S.C. §§ 552a(a)(7), (e)(4)(D)).

Ms. Ashbourne does not dispute that the Agency's disclosures complied with both requirements.  *See* ECF No. 53 at 8-9.  As the DHS Defendants explain, the Agency disclosed the Summary of Charges to Ms. Ashbourne's employer and the security guards "pursuant to the routine uses for General Personnel Records as specified on the first page of the form OF-306 as part of a standard Coast Guard practice."  ECF No. 55 at 6; *see* ECF No. 30-5 at 161 (Def. Ex. 3) (averring that disclosures conformed to the Agency's standard practice); *see Alexander v. FBI*, 691 F. Supp. 2d 182, 191 (D.D.C. 2010), *aff'd*, 456 F. App'x 1 (D.C. Cir. 2011) (finding that disclosure qualified as a routine use because "plaintiffs' records were disclosed to determine whether they were sufficiently trustworthy to be granted access to the White House, and . . . the White House required [the records] to make access determinations.").[7]

---

[7] The court takes judicial notice of the first page of the OF-306, which states that the form's "routine uses" include disclosure to "Federal agencies or other sources requesting information for Federal agencies in connection with hiring or retaining, security clearance, [and] security or suitability investigations."    Declaration for Federal Employment, OMB No. 3206-0182, https://perma.cc/E3YR-HFNX; *see Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 44 n.6 (D.D.C. 2022) ("[T]he Court may take judicial notice of official documents that are publicly available on government websites").

Instead, Ms. Ashbourne argues that "[t]he Privacy Act require[s] the defendants to verify their assertions against third-party evidence *before* they disclosed them," and because the DHS Defendants did not do so, "their disclosures were not protected under the routine use exemption." ECF No. 53 at 9.  But, as explained above, the "assertions" Ms. Ashbourne takes issue with are the Agency's legal conclusions or opinions.  Opinions, by their nature, are not "capable of being verified," *McCready v. Nicholson*, 465 F.3d at 19 (quoting *Sellers v. Bureau of Prisons*, 959 F.2d 307, 312 (D.C. Cir. 1992)), and fall outside the scope of the Privacy Act, *see Mueller*, 485 F.3d at 1197.

Finally, as part of her Privacy Act claim, Ms. Ashbourne alleges that "[i]nstead of interviewing [her]" about the issues raised by her background investigation, the DHS Defendants "traumatized her into believing that she would be clubbed, tackled, or shot in the back."  ECF No. 1 ¶ 27.  But Ms. Ashbourne herself concedes that these claims are unsubstantiated, *see* ECF No. 53 at 10, and "[a]t the summary-judgment posture, it is not enough to rely on unsubstantiated allegations," *Ray v. CLH N.Y. Ave, LLC*, No. 19-CV-2841, 2021 WL 3709932, at *13 (D.D.C. Aug. 20, 2021).

## B.    Due Process

"The Due Process Clause of the Fifth Amendment provides that '[n]o person shall be . . . deprived of life, liberty, or property, without due process of law.'"  *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (alteration in original) (quoting U.S. Const. amend. V).  A due process inquiry has two steps.  First, the court considers "whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).  Second, the court "look[s] to see if the [government's] procedures comport with due process."  *Id.*

In her complaint, Ms. Ashbourne alleged that the DHS Defendants "intentionally and deliberately falsified [her] personnel records which caused her to be publicly terminated amidst stigmatizing charges of dishonesty."[8]  ECF No. 1 ¶ 37; *see* ECF No. 19 at 16.  In general, "persons whose future employment prospects have been impaired by government defamation 'lack . . . any constitutional protection for the interest in reputation.'"  *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003) (quoting *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)).  There are two exceptions: "stigma" claims and "reputation-plus" claims.  *See McCormick v. District of Columbia*, 752 F.3d 980, 987-88 (D.C. Cir. 2014).  The stigma theory "provides a remedy where the terminating employer imposes upon the discharged employee 'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities.'"  *Id.* at 988 (alteration in original) (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998)).  A reputation-plus theory "makes the termination actionable only where the terminating employer has disseminated the reasons for the termination and such dissemination is defamatory."  *Id.*  But, "[e]ven if [Ms. Ashbourne] has created a dispute of material fact as to the deprivation of her liberty interest under both the 'reputation-plus' and 'stigma or disability' theories, her procedural due process claim would still fail if she had received a constitutionally sufficient post-termination opportunity to seek a 'name-clearing' hearing."  *Campbell v. District of Columbia*, 126 F. Supp. 3d 141, 155 (D.D.C. 2015).  The court concludes that Ms. Ashbourne has been afforded such an opportunity.

---

[8] At the motion-to-dismiss stage, this court considered whether Ms. Ashbourne had stated a claim for either a property-interest or liberty-interest due process claim.  *See* ECF No. 19 at 16.  The court dismissed Ms. Ashbourne's property-interest claim; only her liberty-interest theory of due process remains before this court.  *Id.*

"The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).  Due process must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane*, 339 U.S. at 314).  Due process requires that Ms. Ashbourne be afforded "an opportunity to clear h[er] name," but "[t]he basic requirement in such a hearing is minimal: it must provide notice of the charges and an opportunity to refute them effectively." *McCormick*, 752 F.3d at 989 (quoting *Codd v. Velger*, 429 U.S. 624, 627 (1977)).  There is no genuine dispute that Ms. Ashbourne had such an opportunity.  The SECCEN letter informed her that she had the "opportunity to answer and make any comments or explanation [she] wish[ed] in the space provided after each charge" within thirty days, that she could provide documentary evidence, and that she could request a copy of the material the Agency had relied upon in preparing the Summary of Charges.  ECF No. 30-4 at 1-2 (Def. Ex. 2); *see Kursar v. Transp. Sec. Admin.*, 751 F. Supp. 2d 154, 172 (D.D.C. 2010), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011) (concluding that the plaintiff had been afforded due process where he was provided with a notice of termination and had the opportunity to submit a written answer and supporting evidence).  The SECCEN letter explained that, if Ms. Ashbourne did not reply within thirty days, the Agency would "ma[ke] a decision based on the information on hand."  ECF No. 30-4 at 2 (Def. Ex. 2).  Ms. Ashbourne did not respond to the charges.  ECF No. 53-2 ¶ 13; ECF No. 30-5 at 103 (Def. Ex. 3) (finding that, "according to the record the Complainant was given 30-days to file a rebuttal to the background investigation results,

to which no rebuttal was received").  Thus, Ms. Ashbourne was afforded appropriate due process, even if she chose not to pursue it.[9]

Ms. Ashbourne's sole counterargument is that the DHS Defendants "denied [her] a meaningful opportunity to be heard, because they did not provide her with notice *before* Thomas Harker met with her on April 22, 2015."  ECF No. 53 at 10 (emphasis in original).  But that is not what due process requires.  As explained above, a plaintiff cannot prevail on a reputation-plus due process claim if she is afforded "a constitutionally sufficient *post-termination* opportunity to seek a 'name-clearing' hearing."[10]  *Campbell*, 126 F. Supp. 3d at 155 (emphasis added).

Because Ms. Ashbourne received appropriate due process, the court grants summary judgment to the Agency on this issue.

## V.      Conclusion

For the foregoing reasons, the court will grant the DHS Defendants' motion for summary judgment, ECF No. 30.  A separate order will issue.

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: July 17, 2024

---

[9] The court also notes that Ms. Ashbourne could have appealed the Coast Guard's suitability determination to the Merit Systems Protection Board.  5 C.F.R. § 731.501(a); *see* ECF No. 30-1 at 6.

[10] Ms. Ashbourne reiterates that the DHS Defendants should have verified "their assertions against the factual records of independent and objective third parties."  ECF No. 53 at 10.  But this simply restates her Privacy Act claims, which are defective for the reasons stated above.